IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAJ WILSON,<br><br>        Plaintiff<br><br>v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY,<br><br>        Defendant. | Civil No. 05-2146 (JGP) |

**OPPOSITION TO MOTION
TO INTRODUCE EXPERT AND EXPERT REPORT**

Comes now the Defendant, by and through counsel, and opposes the Plaintiff's Motion to Introduce Expert and Expert.

<u>Summary</u>

The deadline in this case for identifying an expert was August 7, 2006 (Scheduling Order, Docket #10). Moreover, the subject matter for which the Plaintiff offers the "expert" can and should be considered and determined by the fact finder. An "expert" opinion regarding "disparities" in investigations of police officers will not be of assistance to the jury. See Motion, ¶ 4. Accordingly, to permit the Plaintiff to add the "expert" will merely be a waste of time. The expert identification deadline having passed over a year ago, the Plaintiff has the burden of showing why the Court should make an exception to its Scheduling Orders. The Plaintiff plainly cannot do so. The Motion should be denied.

**Over A Year Late**

Taj Wilson was fired from the Metro Transit Police in November 2004. This action was filed in November 2005. It was served upon the Defendant in April, 2006. In their Rule 16.3 report, filed June 6, 2006, the parties agreed that the Plaintiff would identify experts within 45 days of the commencement of discovery (June 20, 2006). Until the filing of the instant Motion, no such expert was ever offered by the Plaintiff.

Since the June 2006 scheduling hearing, the parties have agreed multiple times to extend the discovery deadlines in this case. However, at no time during the 14 months since the initial scheduling hearing has the Plaintiff sought additional time to identify an expert, despite multiple opportunities to do so. Now, a year and nine months after filing suit, he wishes to identify an "expert" in the field of internal affairs investigations.

From the very outset of this lawsuit, the Plaintiff has claimed, as he must, that he was disciplined more harshly than were similarly situated white officers. Obviously, then, the Plaintiff had knowledge of the discipline meted out to other officers. See Taj Wilson's Answers to Interrogatories, attached as **A** (served 10/31/06). Moreover, since discovery began over a year ago, the Plaintiff pursued, and WMATA has produced, thousands of pages of documents, most pertaining to the discipline of other officers. The Plaintiff claims that the delay in identifying an expert has been caused by delay in

obtaining documents.  That excuse rings hollow.  Clearly, the Plaintiff's theory has always been the same: that investigations and discipline of other officers was different from his own.  In other words, the production of the documents has not changed the Plaintiff's theory of the case.  Despite that fact, it is only now that Mr. Wilson offers a supposed expert in the field of investigations.[1]

The delay in offering to identify such an expert, particularly in light of the unchanging nature of the Plaintiff's initial claims, is not sufficiently explained by the Plaintiff.  Perhaps the Plaintiff, having reviewed all the investigative reports pertaining to these allegedly "similarly situated" officers, realizes that the reports will not show what he had hoped: that he was <u>not</u> treated more harshly than other, similarly situated officers.  Now, he casts about for a new way to make his case – a way that he had obviously not believed necessary until now. This is not a sufficient or fair reason to permit the addition of an expert so late in the litigation.

**Needless Additional Delay**

In addition to the Plaintiff's failure to adequately explain the delay in his contemplation of an "investigation" expert, there is the fact of additional

---

[1] In fact, an expert on the Plaintiff's side would likely have helped both parties in the early stages, in that the expert could have guided the Plaintiff's requests for information.  Although WMATA recognizes its role in the delay of the production of certain documents in this case, Plaintiff must fairly admit a lack of focus in his requests for documents and information over the last year.

delay that an expert will create in this case.  Mr. Montgomery will have to be deposed by WMATA.  Also, if the Plaintiff is allowed to offer an expert at this stage, then it is only fair that WMATA be permitted to identify an expert if it determines such an expert is necessary after receiving Plaintiff's expert report, as required by Fed. R. Civ. P. 26(a).  Likely, the Plaintiff will then want to depose WMATA's expert.  It is reasonable to expect that such efforts would consume another 3 to 4 months.    This case has lingered since November 2005.  In that time, George Heilman, formerly the internal affairs investigator for WMATA, has retired.  Another MTPD officer who investigated Mr. Wilson, Lieutenant Robert Melan, will likely retire within the coming year. It is not clear that Lieutenant Melan will be readily available as a witness when he leaves WMATA.  The foregoing are merely the possible difficulties about which WMATA knows.  As the case proceeds and as delays occur, the likelihood of additional problems increases.  For the reasons set forth herein, not only will the delay amount to a waste of time, it may also work substantial prejudice upon the Defendant.

The District Court's denial of a continuance will only be reversed for a clear abuse of discretion.  <u>U.S. v. Poston</u>, 902 F.2d 90, 96 (D.C. Cir. 1996).  Moreover, the party requesting the continuance must make a particularized showing that denial of the continuance will harm their case.  For example, where a party requests a continuance of a case in order to obtain missing

evidence, that party must show "that the missing evidence, if produced, would probably affect the result of the case." Gilbert v. Lachapelle, 127 F.2d 750, 751 (D.C. Cir 1942).  Because the proposed "expert" opinion is not the sort permitted by Fed. R. Ev. 702 (see below), the prolonging of this case for the addition of an "investigation expert" will not affect the outcome of the case. It will instead be merely a waste of time.  In other words, the Plaintiff herein is unable to show that a denial of his Motion will "probably affect the outcome of the case."  As such, the Motion should be denied.

**The Subject Matter Does Not Require Expert Opinion;
The Jury Is Able To Assess And Compare The Facts**.

The questionable reason for the delay aside, it is also worth asking what the "expert" will offer in a case such as this.  According to the motion, the "expert" will be offered to "establish() the existence of a disparity in Defendant's disciplinary policies."   Although the meaning of this statement is unclear, the Plaintiff offers no explanation of how such an "expert" would be of any assistance to the fact finder in this case.  More specifically, he offers no suggestion of why a jury would be unable to detect a "disparity" between one set of facts and another.  If it is his intention to show some "disparity" between Metro Transit Police's disciplinary policy and those of some other agency or agencies, such would be irrelevant.  That is because Mr. Wilson's "comparators" must necessarily be Metro Transit Police officers, not officers of some other agency.  Thus, the "comparators" are

subject only to Metro Transit Police Department's policies. The policies of some other agency would be of no relevance in this case. For the same reason, a comparison of policies would be of no relevance.

Rule 702 of the Federal Rules of Evidence permits expert opinion testimony where the expert's "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." It is difficult to imagine why a reasonable lay person would not be able to compare the investigation of Mr. Wilson and its result with the investigations of other officers alleged to be comparators and the results of those investigations. In other words, it is difficult to see how an "expert" would assist the jury in this respect. Where the offered expert opinion would not assist the jury, the testimony is inadmissible. See Fed. R. Ev. 702; Daubert v. Merrill Dow Pharmacies, 509 U.S. 579, 591 (1993).

The discussion of experts in Minebea Co. v. Papst, No. 97-0590 (PLF), 2005 U.S. Dist. Lexis 11946 (D.D.C. June 21, 2005) is instructive in this regard. Minebea arose from a patent dispute between a Japanese and a western company. In its decision, the district court addressed the admissibility of the proposed testimony of various expert witnesses. Two such experts were Japanese cultural and negotiations experts, who were prepared to offer opinions, based upon the Japanese way of conducting business, about whether and the extent to which Minebea negotiators relied

6

upon actions and representations of Papst representatives.  The district court concluded that such testimony would not assist the jury "in understanding the evidence any better than would the testimony of lay witnesses who actively participated in the negotiations," and thus would not be permitted to testify. 2005 U.S. Dist. Lexis 11946 at *10.   In the instant case, there is no indication or reason to believe that an "expert" would assist the jury in understanding the facts of the investigations of Mr. Wilson or his alleged "comparators," or what the various officers, investigators and/or supervisors did and said "better than would the testimony of lay witnesses who actively participated" in the investigations or decision-making.[2] Id.

As in Minebea, the subject matter for which Mr. Montgomery is offered is properly for the jury and the jury alone. An expert's "guidance" in this area is unnecessary.  Fed. R. Ev. 702.  The Plaintiff should not be permitted to waste more time by adding an unnecessary witness, whose appearance would likely delay the case by two to three months.

---

[2] For instance, the facts may show that Mr. Wilson received a certain type of discipline, and that another officer received a different type of discipline, or that one officer was subjected to a polygraph test while Mr. Wilson was not.  But there is nothing about this set of hypothetical facts that would require an expert to "translate" for a lay jury. The subject matter of this case is clearly within the ken of a layperson.

## CONCLUSION

For the foregoing reasons, the Motion to Introduce An Expert & Expert Report should be denied.

Respectfully Submitted,

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

 /s/
Jeffrey C. Seaman #466509
Asst. General Counsel
WMATA - 600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1856