UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

**TAJ WILSON,**

    **Plaintiff,**

v.                                       Civil No: 05-2146 (JGP)

**WMATA**

    **Defendant.**

## PLAINTIFF'S RESPONSES TO DEFENDANT'S INTERROGATORIES

NOW COMES Plaintiff, Taj Wilson, by and through undersigned counsel, and hereby responds to Defendant's First Set of Interrogatories in accordance with F.R.C.P. 33 as follows:

## GENERAL STATEMENT

By responding to Defendant's First Interrogatories, Plaintiff does not waive any objections which may be appropriate (a) to the use, for any purpose, by Defendant of any of the information or documents given in response to Defendant's First Interrogatories or (b) the admissibility, relevancy or materiality of any of the information, documents, or Interrogatories to any issue in this case.

The responses set forth below constitute the best information presently available to Plaintiff. However, Plaintiff reserves the right to amend, supplement, or change the responses made herein, if an when additional, different, or more accurate information becomes available and/or additional facts are developed.



1

## GENERAL OBJECTIONS

1. Plaintiff objects to Defendant's instructions and definitions to the extent they seek disclosure of information protected by the attorney-client privilege and/or the attorney work product doctrine. Furthermore, Plaintiff objects to the interrogatories to the extent they request information from any and all agents, attorneys, investigators, consultants, experts, and other representatives Plaintiff has retained.

2. Plaintiff objects to each and every interrogatory to the extent they call for information to which Defendant's has equal or greater access than Plaintiff.

3. Plaintiff objects to Defendant's definition of "you" and "your" to the extent Defendant seeks to obtain information outside Plaintiff's personal knowledge and/or seeks information protected by the attorney-client privilege and or work product doctrine.

4. Plaintiff objects to these interrogatories to the extent they purport to impose duties and obligations which exceed or are different than those imposed by the Federal Rules of Civil Procedure or Court orders in this action.

## INTERROGATORY RESPONSES

**INTERROGATORY NO.1:** Please identify each and every person whom you consider to be a "similarly situated while Police Officer" who was not subjected to the same discipline to which you were subjected. For each person identified, provide the following:

a. Your understanding of the actions, if any, committed by said person that were comparable to any acts for which you were disciplined;

1. **RESPONSE**: A) ▓▓▓▓▓▓▓▓▓ - was involved in falsifying time sheets and knowingly submitting the time sheets even though he knew they was wrong. This is an example of falsifying official WMATA documents and a clear definition of theft because it involved the above named officer being paid in wages that he did not earn. For these violations the above named officer only received 3 days while I was charged in falsifying statements for not filling out my run sheet correctly and not knowing my speed. For both charges I was given an 11 day suspension as well as termination.

2

███████ was involved in given a false statement in a written report, unauthorized transport, failure to pay full attention to duty, and failure to perform duty impartially. The above named officer was also involved in an incident in which himself and Officer ███████ was involved in an illegal stop. The above named officer was given only an 1 day suspension for each offense totaling 4 days, while I was given 11 days for filling out my runsheet incorrectly and terminated for not knowing my speed during an on duty accident.

███████ – was involved in a case in which she failed to safeguard a prisoner's property as well as returning the prisoners property ( theft) and giving false statements and conflicting statements during an official investigation. The above name officer was only given a total of 2 days suspension for these offenses. I was given 11 days suspension for filling out my runsheet incorrectly and terminated for not knowing my speed during an on duty auto accident

███████ – in a written statement claimed that his weapon discharged due to weapon malfunction, which through investigation proved to be false. The above name officer was only given an 3 day suspension for failure to secure his weapon and was never given a false charge even when evidence proved that his statement was false. I was given an 11 day suspension for filling out my runsheet wrong and terminated for not knowing my speed during an on duty auto accident.

███████ Knowingly gave false information about an officer and then tried to cover it up during a recent investigation. The above name officer was only given a 2 day suspension. I was given a 11 day suspension for filling out my run sheet wrong and terminated for not knowing my speed during an on duty auto accident.

b.   The source of your knowledge of the actions of said person(s). if your source is a person, identify the person and describe in detail the circumstances of your conversation with the "source," and the substance of the conversations(s) with said person pertaining to the "comparable acts" of the similarly situated white officer. If your source is other than a person, provide a detailed description of that source.

**INTERROGATORY NO.2:**   Describe all facts upon which you rely in your allegation that "race and color were facts" in WMATA's decision to terminate your employment.

**RESPONSE:**   The facts that lead me to believe that race and color were factors in WMATA's decision to terminate me from employment are the questionable statements that were made to me numerous times by Metro Transit Management officials sometimes statements that were made while in the company of union officials. Also Metro Transit past practice in handling complaints that was made by myself when race and color discrimination was brought to their attention. While going through the proper chain of command, my complaints was ignored by management and on one occasion was informed by a Captain, that "Metro Transit Police Department does not have a racial

problem". Even with this act witnessed by numerous police officers and being encouraged to write a complaint, the problem was never resolved. Lastly Metro Transit Police department's history of unbalanced punishment in regards to white officers and officers of minority background which is illustrated with my recent findings and discussions with other officers that are still employed by this department.

**INTERROGATORY NO.3:**    Identify all similarly situated individuals who were treated more favorably than you were treated. For each such person, provide the following information:

a.    The acts committed by that person which subjected him or her to discipline by MTPD and/or WMATA.

b.    The discipline actually rendered to that person; and

c.    All facts supporting your conclusion that the person was "similarly situated" to you.

   2. **RESPONSE**: A list of all the similarly situated individuals who were treated more favorably than I was treated were:
   ▓▓▓▓▓▓▓ falsified his time sheets, which is an official MTPD document. He was charge with Discredit and given a 3 day suspension and to restitute lost leave. ▓▓▓▓▓▓▓ falsified his time sheets which is used by MTPD to determine pay for its officer, I unknowingly filled my daily run sheet incorrectly which is a common mistake made by officers. ▓▓▓▓▓▓▓ was given a 3 day suspension while I was given a 11day suspension and eventually terminated from employment for not knowing my speed during an emergency call.

   ▓▓▓▓▓▓▓ gave a false written statement during an investigation in which he did an unauthorized transport of a female juvenile. ▓▓▓▓▓▓▓ was given a 1 day suspension for the false statement charge but I was given a 11 day suspension for incorrectly filling out my runsheet and termination for not knowing my speed during an emergency response call for duty.

   ▓▓▓▓▓▓▓ was actually working on another job while on duty for MTPD for this he was charge with failure to answer call for service and given a dereliction. ▓▓▓▓▓▓▓ did not put this on his daily runsheet as well but was not charge for falsifying documents like I was. He was outside his service area and failed to answer his radio for call of duty possibly putting people lives in danger as well as his fellow officers. I was given 11 days for the same mistake of not filling out my runsheet correctly but if you read the investigative report, I called communications informed them that I was outside of sector and still responded to all radio calls for service.

   ▓▓▓▓▓▓▓ is believed to have given false written and verbal statements during an investigation of a prisoner's missing property. During investigation it

4

was proven that ███████ did posses the missing prisoners property and lied about her involvement. For this she was charge with failure to safeguard prisoner's property and prisoner's property not returned ( theft) and given only 2 days suspension. I was charge with false statements for not knowing my speed and later given an estimation of my speed for investigative purposes. In which I told them it was only an estimation and that I had no idea how fast I was driving. I was later terminated for not being truthful even though ███████ lied about a case involving the theft of a prisoner's property.

███████ was involved in given a false statement during an investigation involving another officer that he supervises, he was given only a 2 day suspension. Again I was charge with false statements for not knowing my speed during an on duty auto accident and terminated .

Also with the cases just listed involving white officers, none of these officers were subjected to what is commonly known as double jeopardy. In reviewing my files you will noticed that on more that just one occasion MTPD officials charge me twice and in some cases 3 times for the same offense but just worded differently. None of the above named officers were subjected to this treatment.

**INTERROGATORY NO.4:** Identify each person who, to your knowledge, was alleged to have committed offenses similar to or the same as those for which you were disciplined while employed as a Metro Transit Police officer.

**RESPONSE:** Officers that were alleged to have committed offenses similar to or the same as those I was disciplined for while employed as a Metro Transit Police officer are; Steve Morrison, Jason Williams, Scott Bird, Thomas Stoltz, Julie Dronsfield, Tommie Call, Robert Honick, Ofc Burkholder.

**INTERROGATORY NO.5:** Identify each of your employers since your termination from WMATA, providing for each the following information:

a. A description of the position that you held;
b. The dates during which you held the position;
c. The identify of your immediate supervisor;
d. Your salary or wage; and
e. The date and reason why you left the employment.

**RESPONSE:** Since my termination I went to work for Georgetown Law Center, my current position there is Special Police officer with the department of Public Safety. I started working there in Jan. 11, 2006 to the present. My immediate supervisor there is Sgt. Eugene Nock. My salary there is currently $30,000 a year.

**INTERROGATORY NO.6:** Identify all persons with knowledge of facts that support your allegations that you were treated differently from similarly situated persons.