## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TAJ WILSON

    **Plaintiff,**

    **v.**

WMATA

    **Defendant.**

**JURY TRIAL REQUESTED**

**Civil No.: 05-2146 (JGP)**

## REQUESTS FOR ADMISSIONS

    **NOW COMES** Plaintiff, Taj Wilson, by undersigned counsel pursuant to FRCP 36, and hereby requests that Defendant respond to the following requests for admission, under oath, within 30 days from today's date.

## INSTRUCTIONS

1. Your answers must include all information concerning the matters inquired about and available to you, your attorneys or other agents.

2. If you fail to respond in a timely fashion, you waive any objection to the Requests, and the Court may order all Requests deemed admitted.

3. In formulating your answer you may not give lack of information or knowledge as a reason for failure to admit or deny, unless you state that you have made reasonable inquiry that the information known or readily obtainable by you is insufficient to enable you to admit or deny the Request.

4. If only part of a Request is objectionable, you must answer the remainder of the Request.

5. Any objection to a Request or part of a Request must clearly state the specific grounds for the objection.

6. A denial of all or any portion of each Request must be unequivocal.

## DEFINITIONS

1.       "Defendant" refers Washington Metropolitan Area Transit Authorities, hereinafter "WMATA" and each of its properties, facilities, affiliates, managers, divisions, subdivisions, predecessors, directors, officers, employees, agents, contractors, members, representatives and all persons acting or purporting to act on its behalf.

2.      "Plaintiff" refers to Taj Wilson.

3.      "Document" means any writing or recording as defined in Rule 1001 of the Federal Rules of Evidence, including any drafts, revisions and computer-readable material.  If a document has been prepared in several copies which are not identical, or if the original identical copies are no longer identical by reason of subsequent notation or other modification of any kind whatsoever, including, but not limited to, notations on the backs of pages thereto, each non-identical copy is a separate document.  "Document" shall also include any data compilation from which information can be obtained or translated if necessary by you through detection devices into reasonable usable form.

4.      "Person" includes, without limitation, any natural person, proprietorship, corporation, partnership, trust, joint venture, association, organization, business entity or governmental agency.

5.      "Relating to" and "relates to" mean, without limitation, relating to, constituting, concerning, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, or tending to prove, disprove, or explain.

6.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.      The use of the singular includes the plural, and vice versa.

8.      The use of one gender includes all others, appropriate in the context.

9.      "Identify" means and requires you to state:

(a)      With respect to a person, his or her name, address, telephone number, employer and job title.

(b)      With respect to a document, the name and address of its author or maker, the names and addresses of all persons who were addressees, the date on which it was created or made, the nature of the document and the substance of the information or communication set forth in the document.

( c )      With respect to a tangible or demonstrative thing, a sufficiently graphic description to distinguish it from other tangible or demonstrative things of the same class or type.

(d)      With respect to conversations and written or oral communications:

(I)      The date on which each conversation or communication occurred

(ii)      The persons making such conversation or communication

(iii)      The substance of the conversation or communication

    (iv)    The names and addresses of every person present when the conversation or communication occurred

    (v)    The place where the conversation occurred.

10. "Relevant time period" is defined from the year 2000.

11. "CVSA" is defined as the Computer Voice Stress Analyzer.

## **REQUESTS FOR ADMISSIONS**

1. Admit or Deny Defendant does not have any policies or procedures that outline how to conduct internal investigations of citizen's complaints.

2. Admit or Deny Defendant does not have any policies or procedures that outline how to conduct internal investigations of serious employee misconduct.

3. Admit or Deny the Chief cannot authorize administering CVSA and/or polygraph examinations without the recommendation of the IAD.

4. Admit or Deny the CVSA has never been used in an internal investigation prior to its use in WMATA's investigation of Plaintiff resulting from the August 15th incident.

5. Admit or Deny a polygraph examination was administered to Julie Dronsfeld.

6. Admit or Deny Defendant hired an FBI expert to interpret the results of Officer Dronsfeld's polygraph examination.

7. Admit or Deny according to the applicable and relevant collective bargaining agreement at the time of the June 18th incident, a citizen's complaint was required to be dismissed if a citizen withdrew or failed to cooperate with the investigation of the complaint.

8. Admit or Deny Captain Heilman was the custodian of a "Database"; and that a purpose of the Database was to ensure consistency in disciplinary recommendations based upon past practices.

9. Admit or Deny during the relevant time period, Captain Heilman had the authority to provide input into the recommendations for disciplinary actions imposed upon WMATA Metro Transit Police Officers at the conclusion of investigations.

10. Admit or Deny Captain Heilman initiated contact with Sergeant Snowden regarding the June 18, 2004 incident concerning Plaintiff which Snowden allegedly observed at the parking lot of CVS drugstore.

11. Admit or Deny that Sergeant Snowden made no contact with Defendant prior to being contacted by Captain Heilman concerning the June 18, 2004 incident concerning Plaintiff.

12. Admit or Deny that Plaintiff's run sheet violation on June 18th was his very first offense for that particular violation.

13. Admit or Deny Plaintiff being out of his sector on June 18th, was his very first offense for that particular violation.

14. Admit or Deny that Plaintiff was not assigned to neither the Southern or Suitland sectors on June 18th.

15. Admit or Deny that Plaintiff identified witnesses during Defendant's investigation of the June 18th and August 15th incidents.

16. Admit or Deny that Plaintiff identified witnesses for both the June 18th and August 15th incidents that were not interviewed by Defendant during the investigation of Plaintiff.

17. Admit or Deny that Prince George's County Police Officer Adey stated in his report that Plaintiff was a "professional" during the incident in the parking lot of CVS drugstore on June 18th.

18. Admit or Deny that Plaintiff informed Officer Adey that his girlfriend and personal vehicle were involved in the incident and he provided assistance in separating the group.

19. Admit or Deny that U.S. Park Police Officer, Sergeant Snowden never stated weapons were drawn or that he was ever in any physical harm or that harm was threatened upon him while present at the scene on June 18th .

20. Admit or Deny that a complainant by the name of Ms. Parker refused to cooperate with Captain Heilman's investigation of the June 18th incident.

21. Admit or Deny that on August 15th Plaintiff was responding to a Code One at the time he was involved in an accident.

22. Admit or Deny that the incident Plaintiff was responding to was dispatched as a fight that involved a large group of people with possible weapons possession.

23. Admit or Deny that Defendant's non-discriminatory explanation for terminating Plaintiff's employment was largely in part because of the August 15th incident.

24. Admit or Deny that Plaintiff was not presented with any photographs of the August 15th accident scene by his supervisor or any Defendant manager prior to his discipline for that incident.

25. Admit or Deny that WMATA was fully aware of the June 18th recommendation for disciplinary actions for Plaintiff after the occurrence of the August 15th incident.

26. Admit or Deny that Plaintiff allegedly falsified statements during the investigation of the August 15th incident.

27. Admit or Deny that the August 15th incident Plaintiff was alleged to have made false statements regarding the following:

a. Wearing his seat belt;
b. Rate of driving speed; and
c. Oncoming vehicle drove into his lane

28. Admit or Deny that during Defendant's investigation, WMATA made no effort to canvass the community or interview witnesses who could either corroborate or dispute Plaintiff's contention that he was avoiding an oncoming vehicle.

29. Admit or Deny Defendant did not provide Plaintiff the results of his CVSA examination until after he initiated the current litigation.

30. Admit or Deny Plaintiff's CVSA results did not detect deception in questions pertaining to an oncoming vehicle.

31. Admit or Deny that the on board computer in Plaintiff's cruiser was inconclusive regarding whether or not he wore a seat belt at the time of impact in the incident that occurred on August 15th.

32. Admit or Deny Defendant had the discretion to retain an expert to ensure the integrity of Plaintiff's CVSA examination results similar to what it afforded Julie Dronsfeld after her polygraph examination.

33. Admit or Deny that WMATA had the discretion to recommend Plaintiff for a lesser intense disciplinary action as opposed to termination for the August 15th incident.

34. Admit or Deny that both the polygraph and/or the CVSA have been only utilized during the course of the internal investigations of the following WMATA Metro Transit Police Officers: Plaintiff, Napadon Woods, Julie Rumsfeld, Mark Stein.

35. Admit or Deny that Metro Police Officer Robert Burkholder's race is white.

36. Admit or Deny that Officer Burkholder was charged with each of the following offenses at the specified times. Please respond separately:

5

- *Fall 2004: conducted traffic stop on vehicle following too closely on North Kings Hwy that was operated by an ex-WMATA employee;_____*

- *October 26, 2004:  traffic stop on I-95 that involved a WMATA Bus Supervisor driving a WMATA vehicle; _____*

- *January 25, 2005: while off duty, conducted a traffic stop in the HOV lane (placed on restriction not to conduct further stops unless "directed by a supervisor or witnesses an incident that causes death, serious injury or property destruction.");_____*

- *March 29, 2005: Chad Sparrow citizen's complaint; had a window tint meter that did not meet the Virginia standards; Mr. Sparrow contradicted Burkholder's account of the incident; was outside of WMATA jurisdiction and stop was unauthorized; described by investigator as " displayed signs of deception;" never reported his location of the traffic stop; _____*

- *April 29, 2005: Craig Jacobs (police officer) complained of operating K-9 vehicle as described as "road rage;"  while driving on I-95 in Prince William County, utilized emergency equipment and passed other vehicles on the shoulder lane; failed to report alleged drunk driver; was not charged with lying/falsifying report although it was established; _____*

- *June 24, 2005: out of his assigned sector without authorization when he observed infractions; and_____*

- June 27, 2005: removed from K-9 program after repeated incidents of departmental violations and infractions. _____

37. Admit or Deny that Officer Burkholder was not required to undergo either polygraph or CVSA examinations while under investigation of the aforementioned described incidents.

38. Admit or Deny that Metro Police Officer Jason Williams' race is white and he is a Metro Transit Police Officer.

**39.** Admit or Deny that Officer Williams received a recommendation for discipline for 13 days' suspension from Sergeant Gregory Hanna partly because of Office Williams' previous violations of false reporting.

40. Admit or Deny that Officer Williams' discipline was reduced to 6 days' suspension and reprimand through grievance.

41. Admit or Deny that during Officer Williams' investigation, Sgt. Hanna alleged that he was evasive in his responses and was permitted to modify his answers and responses.

42. Admit or Deny that Officer Williams' was charged with falsifying run sheets and failure to make entries of Sector two runs for the incident that occurred on September 13, 2003.

43. Admit or Deny that Officer Williams' was permitted by the investigator, Timothy Mallory to supplement the response to his report regarding the incident of September 13, 2003.

44. Admit or Deny that Officer Williams' second report or modified response was different than his initial report or response to the incident of September 13, 2003.

45. Admit or Deny that for a first time offense of being out of sector, the recommended punishment is a verbal warning pursuant to the collective bargaining agreement during the relevant time period.

46. Admit or Deny that Officer Williams had prior offenses that included, amongst other things, charges for lying.

47. Admit or Deny that Officer Williams had prior offenses that included, amongst other things, charges for falsifying reports.

48. Admit or Deny that Officer Williams was not required to undergo either a polygraph or CVSA examinations while under any of his investigations.

49. Admit or Deny that Officer Napadon Woods, amongst other things, was charged with offenses that included either theft or that included an element of theft.

50. Admit or Deny that Officer Julie Dronsfeld, amongst other things, offenses that included either theft or an element of theft.

51. Admit or Deny that Officer Mark Stein, amongst other things, offenses that included theft or an element of theft.

52. Admit or Deny that Officer Lanier is African-American and was terminated for transporting his child to school in his assigned cruiser.

53. Admit or Deny that Lieutenant Mallory is White and transported his child from church in his assigned cruiser and resulted in an accident.

54. Admit or Deny that Lieutenant Mallory was not terminated for the accident that occurred while he was transporting his son to church in his assigned cruiser.

55. Admit or Deny that Plaintiff is the only Metro Police Officer terminated for conduct allegedly related to an accident with his assigned cruiser.

56. Admit or Deny that Metro Officer David Root is white and was involved in a hit and run accident.

57. Admit or Deny that Officer David Root was not terminated for the hit and run accident.

58. Admit or Deny that Officer Julie Dronsfeld was assigned to work in Chief Hanson's office while she was under investigation for the Palm Pilot incident.

59. Admit or Deny that Officer Napodon Woods' race is Asian was also investigated regarding the Palm Pilot incident.

60. Admit or Deny that WMATA had the discretion to retain an expert to review the polygraph examination of Napodon Woods.

61. Admit or Deny that Officer Napodon Woods was terminated from WMATA because of his involvement with the Palm Pilot incident.

62. Admit or Deny that Officer Napodon Woods was eventually exonerated and his employment with WMATA was reinstated as a result of arbitration.

63. Admit or Deny that Officer Steven Smith's race is white and he was assigned to work in WMATA's headquarters while he was under investigation for making a racially offensive joke or comment to an individual.

64. Admit or Deny that Metro Officer Ron Edwards' race is white.

65. Admit or Deny that Officer Edwards allegedly forged a judicial signature on a document.

66. Admit or Deny that Officer Edwards was not terminated for the alleged forgery.

Respectfully submitted on behalf of Plaintiff:


Dated: November 13, 2007    Signed: _____/S/_____

                                              Nathaniel D. Johnson

**<u>Certificate of Service</u>**

I, Nathaniel D. Johnson, affirm under the penalty of perjury that on this date, November

13, 2007, the foregoing Plaintiff's Request for Admissions were forwarded, via electronic and

pre-paid postage, to the following addressee:

Jeffrey Seaman, Esq.
Assistant General Counsel
WMATA-COUN
600 Fifth Street, N.W.
Washington, D.C. 20001

Attorney for Defendant

_____/S/_____

Nathaniel D. Johnson