**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

TAJ WILSON,

      Plaintiff

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,

      Defendant.

C.A. 05-2146 (GK/AK)

**OPPOSITION TO MOTION TO COMPEL DISCOVERY**

Comes now the Defendant, by and through the undersigned counsel, and opposes the Motion to Compel filed by the Plaintiff.  The Defendant has produced to the Plaintiff thousands of pages of documents concerning discipline of various officers of the Metro Transit Police.  The Motion, in which it is alleged that the Defendant "has not supplemented its discovery" is inaccurate and, with all due respect, misleading.

This is a Title VII action arising from the discharge of the Plaintiff, a former Metro Transit Police Officer, from the employ of WMATA.  The discovery issues in this case, therefore, concern the disciplinary histories of those persons whom the Plaintiff considers to be "similarly situated."  The Defendant has actually made substantial efforts and has been cooperative with the Plaintiff in his quest for documents and information, when provided with sufficient guidance about what the Plaintiff seeks.

The Plaintiff's memorandum in support of the motion to compel omits

significant details, and inaccurately portrays WMATA as recalcitrant.  In fact,

WMATA has provided the Plaintiff with nearly 2,500 pages of memoranda,

interview transcripts, written statements, test results, disciplinary records and

reports pertaining to persons whom the Plaintiff apparently considers to be

"similarly situated" in this Title VII action.  WMATA has provided a great deal of

documentation to the Plaintiff over the course of this litigation, and provided 85

more pages of documents in response to the most recent requests from the

Plaintiff.

It is significant to note that WMATA timely provided answers and responses

to the Plaintiff's interrogatories and requests for production of documents in July,

2006. Plaintiff expressed displeasure with the scope of the responses, seeking

detailed disciplinary information about particular employees of WMATA.  Counsel

conferred about and then entered into a protective order, which this Court entered

in August, 2006.  Defendant accordingly supplemented its discovery responses in

December, 2006 with approximately 500 pages of documents from the disciplinary

files of the individuals identified by the Plaintiff as comparators.  Plaintiff then

issued a letter in January 2007 requesting additional information about 5 of the

"comparators."  In response to the letter, the undersigned contacted counsel for

clarification.  Counsel conferred, and Plaintiff's counsel indicated more specifically

what he sought.  WMATA supplied what it considered to be that additional

information in February 2007, with the exception of some audiotapes of

investigative interviews, which had yet to be identified and copied. Counsel for the Plaintiff indicated that he wanted more information, specifically about the arbitration over the discharge of another Metro Transit officer. Then, on April 10, 2007, WMATA provided another 900 pages of documents, pursuant to Plaintiff's request for transcripts pertaining to a labor arbitration arising from the discharge of that officer (which occurred after the Plaintiff was discharged). The Defendant also produced at that time audiotapes that had been requested, and some additional documentation that the undersigned discovered about past discipline of one of the officers identified as a "similarly situated" person.

A movant under Rule 37(a)(2)(B) is obligated to show that the non-movant has failed to respond to a discovery request. The Plaintiff has made no such showing, but has merely offered a conclusory statement that the Defendant has "not supplemented its inadequate responses." This conclusory statement is illustrative of the difficulty the parties have had throughout this discovery process. The Plaintiff needs to provide some guidance about what he believes he should but does not yet have. On May 11, 2007, Judge Penn denied a prior motion to compel filed by Plaintiff in this case because of a similar lack of specificity (Docket #30)(attachment 1).

Plaintiff has not followed the requirements of LCivR 26.2 (d) which requires that plaintiff identify each interrogatory and response in its opposition. More critically, plaintiff provided no discussion of any of the objections raised by

defendant.  In lieu of such explanation, in filing this Opposition, defendant will refer

to and rely upon Exhibit 7 to plaintiff's Motion, a letter of January 4, 2008, which

is described as plaintiff's "Meet and Confer Statement."  The letter states that

"here are the issues that will be presented in my motion to compel that will be filed

today."  Attachment 2.   WMATA will discuss the contentions raised therein, but

reserves the right to file a supplement should plaintiff raise additional issues.

More generally, plaintiff does not provide any justification or explanation for

its motion to compel, other than a citation to two authorities involving egregious

circumstance not present here.  In one, the District of Columbia initially  provided

no discovery and then willfully failed to comply with the court's prior order.  Green

v. District of Columbia, 134 F.R.D. 1 (D.D.C. 1991).  In the other, NHL v. Metro.

Hockey Club, 427 U.S. 639, 642 (U.S. 1976) the focus was not on the discovery

issue so much as whether the District Court abused its discretion in dismissing the

case for cause, following protracted failure to respond to discovery.  Thus plaintiff

has failed to satisfy the requirement of LCivR 7(a) of providing "*specific* points of

law and authority that support the motion."  Here, WMATA has raised principled

objections both to the form and relevance of the disputed interrogatories and

plaintiff has declined to address a single one of defendant's objections. This is the

same deficiency noted in Washington v. Thurgood Marshall Academy, 232 F.R.D.

6, 9-10 (D.D.C. 2006), where Judge Facciola declined to compel answers where

the plaintiff had completely failed to explain how the answers were evasive,

incomplete or nonresponsive.

Interrogatory 3

3.      Please identify the individual whom Terrence Tripplett and Sgt.
        Gregory Hanna referenced during their depositions who was alleged to
        have, "falsified or forged a judicial signature."
        **ANSWER:**

        Without conceding that there was an officer charged with falsifying or
        forging a judicial signature the person who was references is Officer
        Ron Edwards.

        In his January 4, letter plaintiff's counsel states that there is no reference to

the falsification of a judicial signature in the documents previously produced relating

to Ronnie Edwards.  Bates No. 3760-3764.  WMATA did not concede that Officer

Edwards was charged with falsifying a judicial signature, it simply confirmed that

Officer Edwards was the subject of the discussion during the depositions of

Terrence Tripplett and Sgt. Hanna.  "In drafting document requests, it is the party

seeking discovery that bears the burden of fashioning the requests appropriately."

Peterson v. Hantman, 227 F.R.D. 13, 17 (D.D.C. 2005).

        Plaintiff also complains about the failure to produce referenced attachments

in the production of documents.   Document Request No. 2 asked for Ron Edwards'

personnel file.  WMATA objected but produced 36 pages of documents relating to

Ron Edwards.   In Washington v. Thurgood Marshall Academy, 232 F.R.D. 6, 12

(D.D.C. 2006), Judge Facciola specifically held that "an employee's personnel file

contains private and sensitive information and plaintiff makes no effort in her

motion to compel to explain how Marshall's *entire* (emphasis in original) . . . would

be relevant."

Interrogatory 5

> 5. Please identify internal discrimination complaints and/or administrative discrimination complaints (e.g., the EEOC, Prince George's County Human Relations Commission, District of Columbia Office of Human Rights, Fairfax County Commission on Human Relations) filed by and/or against Metropolitan Officers as follows;
>   a. nature of the discrimination (race, gender, age, disability, etc.)
>   b. nature of the complaint (promotion, hiring, disciplinary actions, etc.)
>   c. the final disposition of the complaint

> **ANSWER:**

> Objection. This request is overly broad in time and scope, unduly burdensome to produce and not reasonably calculated to lead to the discovery of admissible evidence. WMATA also objects to this request because there are no claims regarding disability discrimination or age or gender discrimination raised in the EEOC charge and therefore these bases of discrimination are not relevant to any claim arising in this matter. Similarly claims regarding promotions and hiring decisions are not relevant. Finally, WMATA objects because this request is not limited to employment discrimination claims involving WMATA personnel.

Interrogatories may be objected to on the ground that they are not within the

scope of discovery as defined in Fed. R. Civ. P. 26(b), because they seek

information not relevant to the subject matter of the action. Wright and Miller,

Federal Practice and Procedure, §2174. Defendant objected to a series of

interrogatories on the basis that the request sought information not reasonably

within the scope of the EEOC charge and therefore not within the scope of the

Complaint before this Court. . "A Title VII lawsuit following the EEOC charge is

limited in scope to claims that are 'like or reasonably related to the allegations of

the charge and growing out of such allegations." Park v. Howard University, 71

F.3d 904, 907 (D.C. Cir. 1995).   In Park the court held that plaintiff had failed to

exhaust her administrative remedies because her charge filed with the EEOC did not

cover issues relating to national origin hostile work environment, and reversed the

award of $150,000 in damages.  Accord, Marshall v. Federal Express Corp., 130

F.3d 1095 (D.C.Cir. 1997)(wrongful termination claim was not before the court,

where the charge only spoke of the employer's failure to allow the plaintiff to apply

for the Operations Agent job.).  The Supreme Court's decision in National Railroad

Passenger Corporation v. Morgan, 536 U.S. 101 (2002) has heightened the

requirement that there must be an EEOC charge covering each discrete matter

which is the subject of a complaint in court.

    Here, the EEOC Charge (attachment 3) identified Race and Retaliation as the

sole basis for discrimination and stated: "I have been employed with Respondent as

a Police Officer since January 14, 2002.  I feel that the Respondent has treated me

differently than similarly situated white employees and reported this to

management and EEO.  On November 12, 2004 I was terminated from my position

with Respondent.  I believe I have been discriminated against based on my race

(Black) and retaliation (Discharge)."

    The request is overly broad and not limited to the discovery of relevant

information.   The request is not limited to the terminations or even adverse

actions.   It specifically seeks information on a wide array of employment practices,

such as promotions and hirings, matters which are completely outside the purview

of the EEOC Charge and therefore beyond the outer bounds of relevancy for this Court.   Plaintiff is not challenging his failure to be promoted.  By specifically asking about gender, race and disability, the interrogatory ventures far beyond what could possibly be relevant.   Plaintiff does not even claim in his Amended Complaint that he suffered discrimination on the basis of age or disability and thus has no basis for seeking discovery on this subject.   Because plaintiff cannot raise claims regarding sex discrimination in this action because they were not raised before the EEOC, he cannot obtain discovery on these subject.     Finally, by simply referring to discrimination, without qualifying the reference to "employment discrimination," plaintiff has expanded the scope of the request to complaints which might be brought against WMATA police officers by suspects and arrestees, who might claim discrimination in violation of Title VI, which bars discrimination by federal grantees.   Such complaints of race based police brutality for example, might be filed with local human rights agencies.

Interrogatory No. 7 (Interrogatory No. 6 reproduced for context)

> 6. Please state if whether or not WMATA requires any specialized
> training and/or certification for its operation of the CVSA and/or
> polygraph instruments.
>  ANSWER:
>
>  Yes. Metro Transit Police Department requires certification to administer CVSA.
>
> 7. If the response to interrogatory no. 6 is in the affirmative, please
> identify the name(s) of the operator, training programs, dates attended,
> location.
>  ANSWER:
>  Objection. This request is vague as to the meaning of "name(s) of the

operator, training programs, dates attended, location" in the context of
the interrogatory and cannot be answered with any degree of specificity
because WMATA cannot discern whose training record is sought.  To
the extent the interrogatory is seeking to identify all persons who have
received such training, it is overly broad and burdensome.  Without
waiving the objection, please refer to the attached Exhibit 6 regarding
Lt. Melan.  In light of the copious amounts of documents provided to
the Plaintiff, the responsiveness to Plaintiff's specific requests, and the
lack of specificity offered in the Motion to Compel, the Defendant
requests that the Motion be denied.

Fundamentally, the objection challenges the phrasing of the interrogatory, as

it did not limit the request to information about the training and certification of

officials involved in administering tests to plaintiff.  However, this is what

defendant understood to be the nub of the question and for this reason,

notwithstanding its objection, it provided information relating to Lt. Melan, who is a

key actor in the matter.  Under Thurgood Marshall Academy, it is the proponent

who has the burden of fashioning appropriately worded requests.   Plaintiff does

not have a generalized basis for requesting the training records of all personnel who

have used this equipment during the 30 year history of the Metropolitan Transit

Police.

Interrogatories 8, 9, 11

8. Please identify Defendant's discrimination or anti-discrimination
policy during the period Plaintiff attended the academy.
**ANSWER:**

For copies of WMATA's policies, please refer to Exhibit 2. These policies
do not apply to conduct at the Northern Virginia Criminal Training Justice
Academy  (Academy) because Academy employees are not WMATA
employees and WMATA objects to this request to the extent that it seeks

information regarding the conduct or standards of the Academy employees. Without waiving the objection, please refer to Exhibit 5 for the Academy policies.

9. Please identify Defendant's policy with respect to accidents or collisions with respect to investigations.
**ANSWER:**

WMATA objects on the basis that the interrogatory is vague and cannot be answered with any degree of certainty whatsoever. Without waiving its objection, please refer to Exhibit 3.

11. Please identify Defendant's policy for investigating complaints of Metropolitan Officers' use and/or discharge of firearms in off-duty situations.
ANSWER:
Please refer to Exhibit 4.

Plaintiff complains that WMATA has only produced documents covering the period "after the fact." In comparing the wording of Interrogatory 8 with the other two, it is clear that plaintiff did not limit his request to the time period involved in the complaint, as he simply asked for the policy in interrogatories 9 and 11. To the extent plaintiff is seeking information about policies in place at the Northern Virginia Criminal Justice Training Academy, WMATA objected because it is not responsible for these policies and it has no obligation to provide documents not in its possession. WMATA provided the documents relating to the Academy which were made available to it by the Academy. Among the other policies provided to plaintiff, Policy No. 1.3, EEO and Affirmative Action Policy (Bates Nos. 3791-2) is dated June 17, 2004; General Order 231, Investigation of Employee Misconduct Allegations(Bates Nos. 3800-3809) is dated August 15, 2003; and General Order 306, Emergency Vehicle Operation (Bates Nos. 3810-3812) is dated May 15,

1999.   According to the amended complaint, Mr. Wilson was employed between

January 2002 and November 2004 and these policies were in force during that

time.  WMATA sought clarification from plaintiff regarding the claim that the

policies were not timely, but received no response.  See attachment 4.

Interrogatory 10

>10. Please identify all Metropolitan Officers whom were involved in
>automobile and/or motorcycle accidents or collisions as follows:
>  a. identify the circumstances
>  b. state the jurisdiction the incident occurred
>  c. identify if whether or not the individual was charged and/or investigated
>  d. identify if whether or not the individual was disciplined
>  e. identify the investigator
>  f. state the final disposition of the matter
>  **ANSWER:**
>
>Objection. This request is overly broad in time and scope, unduly
>burdensome to produce and not reasonably calculated to lead to the
>discovery of admissible evidence. Moreover, to the extent relevant, this
>request is redundant and has been more than sufficiently answered by
>WMATA in its previous responses. See, Bate Stamp, 1242 - 3754.

The request is not limited to any particular time nor is it limited to similarly

situated personnel.  Nor is the request relevant, because plaintiff was terminated

because of his record for veracity, albeit in the context of an investigation following

an accident during which he lost control of his vehicle and crashed into a residence.

In its responses to the requests for admissions, No. 55, WMATA stated that

plaintiff was not terminated because he had an accident with his assigned cruiser.

Moreover, WMATA has previously provided plaintiff with significant information

relevant to this issue.

Interrogatory 13

      13. Please state if Defendant has ever received complaints from WMATA Metropolitan Officers regarding the use of racially derogatory terms in the workplace, roll call, off-site, training academy by a WMATA employee(s). If so, please identify by the following:
a. what were the circumstances of the alleged incident
b. name of the accused
c. name of the accuser
d. whether or not WMATA conducted an investigation of the incident
e. name the investigator and his or her training for investigation incidents of this nature
f. please state the final outcome or disposition of the matter

ANSWER:
Objection. This request is overly broad, unduly burdensome to produce and is not reasonably calculated to lead to the discovery of admissible evidence.  Additionally, WMATA  objects to this request because no claims of hostile work environment or other claims relevant to this issue were raised by the plaintiff in the EEOC charge. WMATA further objects to the inclusion of complaints regarding the training academy and "off-site." WMATA also objects to the coverage of issues arising while plaintiff was a police cadet at the Northern Virginia Criminal Justice Training Academy which is not subject to WMATA's control. WMATA contracts with other police forces for these services. WMATA objects to the phrase "off-site" as ambiguous and as embracing off-duty conduct not relevant to this matter.

      The thrust of this interrogatory is to seek information relating to alleged slurs experienced by plaintiff or by other African-American police officers.  At the core of WMATA's objection is the same objection voiced in regard to Interrogatory 5, that the subject of racial slurs is outside the scope of the EEOC Charge and therefore not legitimately brought within the contours of this complaint.  Plaintiff complained to the EEOC that he was treated differently that white officers and that he was wrongfully terminated.  WMATA also objects to the request for information relating to the Academy, as that is a separately chartered  institution for which WMATA is not responsible.   WMATA cannot be held responsible for conduct which occurred

12

while its personnel were taking training at an off-site vender.  The request regarding

"off-site" complaints is too vague to enforce.

In regard to the Request for documents, plaintiff stated that WMATA's

response to the corresponding Document Request is inadequate as well.  "For

instance, composition of officers based upon racial and gender classifications,

complaints of discrimination."   Again, plaintiff has utterly failed to put defendant

on notice as to what is at issue.  Presumably, plaintiff is referring to Document

Request 3 which referred to Interrogatory No. 4, which sought information on the

composition of the Metropolitan Transit Police's workforce.  WMATA adopted its

previously stated objection regarding Interrogatory no. 5.  Information about the

composition of the workforce is completely irrelevant to the matter before this

court, which has to do with Mr. Wilson's termination for cause, not with the hiring

of anyone.



Respectfully submitted,

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY


/s/
Bruce P. Heppen
Assoc. General Counsel
WMATA - 600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-2569