UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

TAJ WILSON,

    Plaintiff,

v.                                   Civil No: 05-2146 (JGP)

WMATA

    Defendant.

**PLAINTIFF'S RESPONSES
TO DEFENDANT'S SECOND INTERROGATORIES**

**NOW COMES** Plaintiff, Taj Wilson, by and through undersigned counsel, and hereby responds to Defendant's Second Set of Interrogatories in accordance with F.R.C.P. 33 as follows:

**GENERAL STATEMENT**

By responding to Defendant's First Interrogatories, Plaintiff does not waive any objections which may be appropriate (a) to the use, for any purpose, by Defendant of any of the information or documents given in response to Defendant's First Interrogatories or (b) the admissibility, relevancy or materiality of any of the information, documents, or Interrogatories to any issue in this case.

The responses set forth below constitute the best information presently available to Plaintiff. However, Plaintiff reserves the right to amend, supplement, or change the responses made herein, if an when additional, different, or more accurate information becomes available and/or additional facts are developed.

**GENERAL OBJECTIONS**

1. Plaintiff objects to Defendant's instructions and definitions to the extent they seek disclosure of information protected by the attorney-client privilege and/or the attorney work product doctrine. Furthermore, Plaintiff objects to the interrogatories to the extent

1

they request information from any and all agents, attorneys, investigators, consultants, experts, and other representatives Plaintiff has retained.

2. Plaintiff objects to each and every interrogatory to the extent they call for information to which Defendant's has equal or greater access than Plaintiff.

3. Plaintiff objects to Defendant's definition of "you" and "your" to the extent Defendant seeks to obtain information outside Plaintiff's personal knowledge and/or seeks information protected by the attorney-client privilege and or work product doctrine.

4. Plaintiff objects to these interrogatories to the extent they purport to impose duties and obligations which exceed or are different than those imposed by the Federal Rules of Civil Procedure or Court orders in this action.

## INTERROGATORY RESPONSES

**INTERROGATORY NO. 9:** Identify all facts that support your allegations in the Amended Complaint that your race, color, and/or sex were factors in WMATA's decision to terminate you.

**RESPONSE:** the facts that lead me to believe that race, color, and or sex were factors in WMATA's decision to terminate me was that their own omission through the union that even though facts show that their were white officers charge with false statements none of them were terminated. Comments that was made in front of Union reps during step 3 grievance in which see use terms like people like him and people like him don't change. during the meeting and was advised by the union rep to refrain from using such comments.  Also the difference on how black officers are treated during an internal investigation compared to the white officers charge with making allege false statements. There is a distinction between the discriminatory practices and policies of defendant in its treatment of minorities and whites.

**INTERROGATORY NO. 10:** Have you ever filed a charge of discrimination with the EEOC or any state fair employment practice agency?  If yes, state the date  each such charge was filed, the basis (or bases) alleged in the charge, the personnel action(s) which were challenged and the persons or persons named as alleged discriminating officials.

**RESPONSE:** I have filed EEOC charges within the WMATA's agency. Once I reported an incident using proper protocol through my supervisor while in training at the Northern Virginia Training Academy. Also I filed an EEOC within the department during the

2

proper time allowed after my termination. I have also filed one through the Washington DC EEOC office

**INTERROGATORY NO.11:** Describe in detail each and every incident and job action which occurred during your employment with WMATA which you allege constitutes discrimination or which contributed to the creation of a hostile work environment, as alleged in paragraph 23 including the dates of the incidents, persons involved, the factual basis for your allegations and the names of persons who have knowledge of the incident.

**RESPONSE:** During Numerous times while employed with WMATA, racial and gender comments was made during WMATA held training, roll calls, and WMATA owned buildings that was used by Metro Transit Officers for WMAT sanctioned activities where comments like Animal Costia was used instead of Anacostia which is a majority African American and Hispanic community. Given Asian Officers without their approval the nickname fortune Cookie and making constant reference to people's ethnic background by making Jewish jokes and joke about women that involved sexual references

**INTERROGATORY NO.12:** Do you contend that you engaged in protected activity within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. 2000(e)(3)(a)?  If so, please identify each such protected act, including the approximate date, the means by which you engaged in the activity (oral or written expression), the person to whom this was directed, and the type of discrimination (i.e. race, national origin, age) which you were opposing.

**RESPONSE:** After the racial incident at the Northern Virginia Training Academy, I was pulled to the side by Captain Tabor and advised that WMATA does not have racial issues and during a weekly meeting that we had with the Captain he made constant references to the case revealing what I thought was supposed to be confidential information to the rest of the workers present during this meeting. Once no investigation was done by management's part and extra physical work was given out by the staff after this meeting, I felt like this was a form of punishment for making a racial complaint, especially after no investigation was done by management about the incident. Only to be threatened to be terminated by the same management about 3 weeks later when a white officer complained that black officers were acting like a gang because we ate lunch together. This complaint was made by a white officer known to use racial slurs (Steven Smith which was terminated for racial comments and brought back)

**INTERROGATORY NO. 13:** Do you contend that you suffered retaliation in the form of adverse treatment because you engaged in protected activity? If so, please identify each such incident of adverse treatment of which you complain, the date of the adverse treatment, the person responsible for the adverse treatment and all persons with knowledge of the adverse treatment.

**RESPONSE:** See previous response in number 12.

**INTERROGATORY NO. 14:** Identify the white officer who is the subject of paragraph 24 of the Amended Complaint, who allegedly refused to touch plaintiff during a drill without wearing gloves and identify the white officer or officers he is alleged to have touched.

**RESPONSE:** The White officer that refused to touch me is Jonathan Vakkasian. The white officer that he touch instead was another officer from another agency that was there for the training and Officer John Rebar (if memory serves me correctly)

**INTERROGATORY NO.15:** Identify the white officers who are the subject of paragraph 26 of the Amended Complaint who allegedly referred to the community of Anacostia as Animal Costia.

**RESPONSE:** There were numerous white officers that made this joke and comment... Officer Kevin Windle, Richard Ray, Scott Bird ..and numerous other white officers

**INTERROGATORY NO.16:** Have you sought any form of medical treatment to address the emotional pain, suffering, inconvenience and mental anguish you allege that you suffered? If yes, please identify the person from whom you sought medical treatment, the approximate dates of such treatment, and any diagnosis provided to you by the treating provider.

**RESPONSE:** No.

4

**INTERROGATORY NO. 17:** Describe in detail any and all damages which you allege resulted from discrimination or retaliation by WMATA, including how monetary damages are calculated.

**RESPONSE:** I have applied to numerous jobs after my job tenure was over with WMATA and every job that I applied for except for the one that I am currently employed with would offer me a conditional job offer only to rescind that job offer given me the reason for their actions were due to the negative reference that WMATA had given them during their check into my work history. Some investigators would tell me that I was very qualified for the job of police officer with their agency but WMATA had given such a negative reference on me that their department did not feel comfortable making me a final job offer. Also, loss wages equate to over $180,000 and attorney fees and costs around $20,000.

Respectfully submitted:

January 25, 2008                _____/s/_____
                                Nathaniel D. Johnson (Federal #14729 MD)
                                Richard L. Thompson (Federal #15980 MD)
                                THE LAW FIRM OF NATHANIEL D. JOHNSON, L.L.C.
                                201 Centennial Street, Suite A-2
                                P.O. Box 1857
                                Waldorf, Maryland  20656
                                301-645-9103/301-893-6890 fax

**Certificate of Service**

I, Nathaniel D. Johnson, certify that on this date, January 25, 2008, the foregoing Second Interrogatory Responses were sent via, e-mail, to the following addressee:

Bruce Heppen, Esq.
WMATA

                                                        /S/: Nathaniel D. Johnson