# EXHIBIT
# 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| TAJ WILSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 05-2146 (GK) |
| | ) | |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY | ) | |
| | ) | |
| Defendant. | ) | |

**WMATA'S SUPPLEMENTAL RESPONSE TO REQUESTS FOR ADMISSIONS**
(amended 2/29/08)

1. Admit or Deny Defendant does not have any policies or procedures that outline how to conduct internal investigations of citizen's complaints.

**Deny. WMATA has a General Order which is a guideline but it does not prescribe specific procedures regarding the conduct of an investigation.**

2. Admit or Deny Defendant does not have any policies or procedures that outline how to conduct internal investigations of serious employee misconduct.

**Deny. See previous Answer.**

3. Admit or Deny the Chief cannot authorize administering CVSA and/or polygraph examinations without the recommendation of the IAD.

**Deny.**

4. Admit or Deny the CVSA has never been used in an internal investigation prior to its use in WMATA's investigation of Plaintiff resulting from the August 15th incident.

**Deny.**

5. Admit or Deny a polygraph examination was administered to Julie Dronsfield.

**Admit.**

6. Admit or Deny Defendant hired an FBI expert to interpret the results of Officer Dronsfield's polygraph examination.

**Deny. An expert was not hired to interpret the results of the polygraph although WMATA admits that an FBI expert was hired for other purposes.**

7. Admit or Deny according to the applicable and relevant collective bargaining agreement at the time of the June 18th incident, a citizen's complaint was required to be dismissed if a citizen withdrew or failed to cooperate with the investigation of the complaint.

**Deny.**

8. Admit or Deny Captain Heilman was the custodian of a "Database"; and that a purpose of the Database was to ensure consistency in disciplinary recommendations based upon past practices.

**Admit that Heilman was the custodian of the Database and that one purpose of the database was to assure consistency in disciplinary actions.**

9. Admit or Deny during the relevant time period, Captain Heilman had the authority to provide input into the recommendations for disciplinary actions imposed upon WMATA Metro Transit Police Officers at the conclusion of investigations.

**Admit.**

10. Admit or Deny Captain Heilman initiated contact with Sergeant Snowden regarding the June 18, 2004 incident concerning Plaintiff which Snowden allegedly observed at the parking lot of CVS drugstore.

**Admit.**

11. Admit or Deny that Sergeant Snowden made no contact with Defendant prior to being contacted by Captain Heilman concerning the June 18, 2004 incident concerning Plaintiff.

**Admit.**

12. Admit or Deny that Plaintiff's run sheet violation on June 18th was his very first offense for that particular violation.

**Admit that it was the first charge based upon misrepresentation in run sheet.**

13. Admit or Deny Plaintiff being out of his sector on June 18th, was his very first offense for that particular violation.

**Admit.**

14. Admit or Deny that Plaintiff was not assigned to neither the Southern or Southland sectors on June 18th.

**Admit.**

15. Admit or Deny that Plaintiff identified witnesses during Defendant's investigation of the June 18th and August 15th incidents.

**Admit that Plaintiff identified witnesses regarding the June 18th incident. Deny that Plaintiff identified witness regarding the August 15th incident.**

16. Admit or Deny that Plaintiff identified witnesses for both the June 18th and August 15th incidents that were not interviewed by Defendant during the investigation of Plaintiff.

**Admit as to June 18th incident, deny as to the August 15th.**

17. Admit or Deny that Prince George's County Police Officer Adey stated in his report that Plaintiff was a "professional" during the incident in the parking lot of CVS drugstore on June 18th .

**Admit.**

18. Admit or Deny that Plaintiff informed Officer Adey that his girlfriend and personal vehicle were involved in the incident and he provided assistance in separating the group.

**Deny.**

19. Admit or Deny that U.S. Park Police Officer, Sergeant Snowden never stated weapons were drawn or that he was ever in any physical harm or that harm was threatened upon him while present at the scene on June 18th .

**Deny.**

20. Admit or Deny that a complainant by the name of Ms. Parker refused to cooperate with Captain Heilman's investigation of the June 18th incident.

**Admit.**

21. Admit or Deny that on August 15th Plaintiff was responding to a Code One at the time he was involved in an accident.

**Admit that he was responding to a "Code."**

22. Admit or Deny that the incident Plaintiff was responding to was dispatched as a fight that involved a large group of people with possible weapons possession.

**Admit.**

23. Admit or Deny that Defendant's non-discriminatory explanation for terminating Plaintiff's employment was largely in part because of the August 15th incident.

**WMATA objects to the form of the question, as the meaning of "largely in part" is ambiguous. Without waiving that objection, WMATA admits that plaintiff was terminated after the conclusion of the investigation of the accident involving the crash into the house and after the determination that he had made untruthful statements.**

24. Admit or Deny that Plaintiff was not presented with any photographs of the August 15th accident scene by his supervisor or any Defendant manager prior to his discipline for that incident.

**Admit.**

25. Admit or Deny that WMATA was fully aware of the June 18th recommendation for disciplinary actions for Plaintiff after the occurrence of the August 15th incident.

**WMATA objects to the form of the question, because of the absence of specificity regarding the assertion of knowledge by an entire corporate entity Denied as phrased. WMATA also objects as to the relevancy of this requested admission.**

26. Admit or Deny that Plaintiff allegedly falsified statements during the

investigation of the August 15th incident.

**Admit that Plaintiff gave false statements.**

27. Admit or Deny that the August 15th incident Plaintiff was alleged to have made false statements regarding the following:

a. Wearing his seat belt;

b. Rate of driving speed; and

c. Oncoming vehicle drove into his lane

**Admit.**

28. Admit or Deny that during Defendant's investigation, WMATA made no effort to canvass the community or interview witnesses who could either corroborate or dispute Plaintiff's contention that he was avoiding an oncoming vehicle.

**Admit that WMATA did not canvass the community but deny that WMATA did not interview witnesses.**

29. Admit or Deny Defendant did not provide Plaintiff the results of his CVSA examination until after he initiated the current litigation.

**Deny.**

30. Admit or Deny Plaintiff's CVSA results did not detect deception in questions pertaining to an oncoming vehicle.

**Deny.**

31. Admit or Deny that the on board computer in Plaintiff's cruiser was inconclusive regarding whether or not he wore a seat belt at the time of impact in the incident that

occurred on August 15th .

**Deny.**

32. Admit or Deny Defendant had the discretion to retain an expert to ensure the integrity of Plaintiff's CVSA examination results similar to what it afforded Julie Dronsfield after her polygraph examination.

**Admit that WMATA has discretion to hire experts.**

33. Admit or Deny that WMATA had the discretion to recommend Plaintiff for a lesser intense disciplinary action as opposed to termination for the August 15th incident.

**Admit.**

34. Admit or Deny that both the polygraph and/or the CVSA have been only utilized during the course of the internal investigations of the following WMATA Metro Transit Police Officers: Plaintiff, Napadon Woods, Julie Rumsfeld, Mark Stein.

**Deny.**

35. Admit or Deny that Metro Police Officer Robert Burkholder's race is white.

**Admit.**

36. Admit or Deny that Officer Burkholder was charged with each of the following offenses at the specified times. Please respond separately:

**WMATA objects to the form of the question, as the relevant inquiry is not what offenses Officer Burkholder might have been charged with but rather what charges were sustained. Moreover, the specific items which are the subject of this request**

**are not necessarily offenses; i.e. the narratives regarding Mr. Sparrow and the release from the K-9 do not cite "offenses."**

- *Fall 2004: conducted traffic stop on vehicle following too closely on North Kings Hwy that was operated by an ex-WMATA employee;*

___________***Admit that Bates Nos. 2682 and 3013 indicate a verbal counseling for following a vehicle too closely in the fall of 2004.***

- *October 26, 2004: traffic stop on I-95 that involved a WMATA Bus Supervisor driving a WMATA vehicle;*

___________***Admit that Bates Nos. 2682 and 3014 indicate a verbal counseling for following a vehicle too closely on October 26, 2004.***

- *January 25, 2005: while off-duty, conducted a traffic stop in the HOV lane (placed on restriction not to conduct further stops unless "directed by a supervisor or witnesses an incident that causes death, serious injury or property destruction.")*

***Admit that Bates Nos. 2682 and 3014 indicate issuance of a dereliction for a traffic stop involving a WMATA Bus Operations Supervisor on January 25, 2005.***

- *March 29, 2005: Chad Sparrow citizen's complaint; had a window tint meter that did not meet the Virginia standards; Mr. Sparrow contradicted Burkholder's account of the incident; was outside of WMATA's jurisdiction and stop was unauthorized; described by investigator as "displayed signs of deception;" never reported his location of the traffic*

*stop;*

***Admit that Chad Sparrow filed a complaint on March 11, 2005 regarding an incident that occurred on March 11, 2005 involving Officers Williams and Burkholder. Admit that the Bates No. 3060-3071, the report of the investigating official, Sgt. Hanna, states that Officer Burkholder displayed signs of deception and finds that Officer Burkholder did not provide information relating to the traffic stop to Communications.***

- *April 29, 2005: Craig Jacobs (police officer) complained of operating K-9 vehicle as described as "road rage;" while driving on I-95 in Prince William County, utilized emergency equipment and passed other vehicles on the shoulder lane; failed to report alleged drunk driver; was not charged with lying/falsifying report although it was established;*

***Admit that based upon a complaint filed by Officer Craig Jacobs, Officer Burkholder was disciplined for behaving unprofessionally and for conduct unbecoming a police officer. See Bates docs. 2849-2858.***

- *June 24, 2005: out of his assigned sector without authorization when he observed infractions;*

***Admit that Bates No. 3016 indicates issuance of a recommendation for discipline based upon a proposed finding of Officer Burkholder being out of his assigned sector on June 24, 2005.***

- *June 27, 2007: removed from K-9 program after repeated incidents of*

*departmental violations and infractions.*

***Admit that Officer Burkholder was released from the K-9 program, but was reinstated following arbitration.***

37. Admit or Deny that Officer Burkholder was not required to undergo either polygraph or CVSA examinations while under investigation of the aforementioned described incidents.

**Admit.**

38. Admit or Deny that Metro Police Officer Jason Williams' race is white and he is a Metro Transit Police Officer.

**Admit.**

39. Admit or Deny that Officer Williams received a recommendation for discipline for 13 days' suspension from Sergeant Gregory Hanna partly because of Officer Williams' previous violations of false reporting.

**Admit.**

40. Admit or Deny that Officer Williams' discipline was reduced to 6 days' suspension and reprimand through grievance.

**Admit.**

41. Admit or Deny that during Officer Williams' investigation, Sgt. Hanna alleged that he was evasive in his responses and was permitted to modify his answers and responses.

**WMATA objects to the form of the question, as Sgt. Hanna wrote a report,**

**Bates No. 3060-3071, in which he stated his conclusions. He made findings, not allegations. Without waiving the objection, WMATA admits that Sgt. Hanna stated in his report that "Officer Williams has consistently displayed to this writer his intent not to cooperate with the inquiry unless ordered to do so . . ."**

**As supplemented Jan. 14, 2008, WMATA admits that Officer Williams was given an opportunity to supplement his original statement with new information.**

42. Admit or Deny that Officer Williams' was charged with falsifying run sheets and failure to make entries of Sector two runs for the incident that occurred on September 13, 2003.

**As reflected in Deposition Exh. 5, from Chief Hanson's deposition on Jan. 11, 2008, WMATA admits that Officer Williams was found to have knowingly documented incorrect information on his Run Sheet regarding patrol activities, locations, times and mileage, as well as willful omissions of three citizen transports in his assigned patrol vehicle in connection with his tour of duty on September 13, 2003. Except as expressly admitted, deny.**

43. Admit or Deny that Officer Williams' was permitted by the investigator, Timothy Mallory to supplement the response to his report regarding the incident on September 13, 2003.

**Objection as to term "permitted" as vague and ambiguous. Without waving that objection, and subject thereto, admit that he did file a supplemental response.**

44. Admit or Deny that Officer Williams' second report or modified response was

different than his initial report or response to the incident of September 13, 2003.

**Objection aas to term "different" as vague and ambiguous. Without waiving that objection and subject thereto, admit that the reports were on other topics.**

45. Admit or Deny that for a first time offense of being out of sector, the recommended punishment is a verbal warning pursuant to the collective bargaining agreement during the relevant time period.

**Deny. The collective bargaining agreement does not mandate punishments.**

46. Admit or Deny that Officer Williams had prior offenses that included, amongst other things, charges for lying.

**Deny.**

47. Admit or Deny that Officer Williams had prior offenses that included, amongst other things, charges for falsifying reports.

**Deny.**

48. Admit or Deny that Officer Williams was not required to undergo either a polygraph or CVSA examinations while under any of his investigations.

**Admit.**

49. Admit or Deny that Officer Napadon Woods, amongst other things, was charged with offenses that included either theft or that included an element of theft.

**Admit.**

50. Admit or Deny that Officer Julie Dronsfield, amongst other things, was charged with offenses that included theft or an element of theft.

**Deny.**

51. Admit or Deny that Officer Mark Stein, amongst other things, was charged with offenses that included theft or an element of theft.

**Admit.**

52. Admit or Deny that Officer Lanier is African-American and was terminated for transporting his child to school in his to school in his assigned cruiser.

**Admit that Officer Lanier is African-American and was investigated for transporting his children. Deny that the reason for termination was for transporting his children to school in his assigned cruiser.**

**As clarified by former Chief Hanson at her deposition on Jan. 11, 2008, admit that he was fired for lying and for other rule violations.**

53. Admit or Deny that Lieutenant Mallory is white and transported his child from church in his assigned cruiser and resulted in an accident.

**Admit.**

54. Admit or Deny that Lieutenant Mallory was not terminated for the accident that occurred while he was transporting his son to church in his assigned cruiser.

**Admit that Lt. Mallory was not terminated by WMATA. Except as admitted, deny.**

55. Admit or Deny that Plaintiff is the only Metro Police Officer terminated for conduct allegedly related to an accident with his assigned cruiser.

**Deny.**

56. Admit or Deny that Metro Officer David Root is white and was involved in a hit and run accident.

**Admit that Officer David Root is White but deny that he was involved in a hit and run accident, although WMATA admits he hit a parked vehicle which he reported.**

57. Admit or Deny that Officer David Root was not terminated for the hit and run accident.

**Admit that Officer David Root was not terminated by WMATA.**

58. Admit or Deny that Officer Julie Dronsfield was assigned to work in Chief Hanson's office while she was under investigation for the Palm Pilot incident.

**Deny.**

59. Admit or Deny that Officer Napodon Woods' race is Asian and was also investigated regarding the Palm Pilot incident.

**Admit.**

60. Admit or Deny that WMATA had the discretion to retain an expert to review the polygraph examination of Napodon Woods.

**Admit that WMATA has discretion to hire experts. WMATA denies the remainder of the allegations contained herein.**

61. Admit or Deny that Officer Napodon Woods was terminated from WMATA because of his involvement with the Palm Pilot incident.

**Admit.**

**As clarified by former Chief Hanson at her deposition on Jan. 11, 2008, Officer**

**Woods was terminated from WMATA for veracity and other departmental rule violations pertaining to the theft of personal property, in this case the Palm Pilot of an arrestee.**

62. Admit or Deny that Officer Napodon Woods was eventually exonerated and his employment with WMATA was reinstated as a result of arbitration.

**Deny that he was "exonerated." WMATA admits that he was reinstated.**

63. Admit or Deny that Officer Steven Smith's race is white and he was assigned to work in WMATA's headquarters while he was under investigation for making a racially offensive joke or comment to an individual.

**Admit.**

64. Admit or Deny that Metro Officer Ron Edwards' race is white.

**Admit.**

65. Admit or Deny that Officer Edwards allegedly forged a judicial signature on a document.

**Deny.**

66. Admit or Deny that Officer Edwards was not terminated for the alleged forgery.

**Admit.**

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

Bruce P. Heppen #252171
Deputy General Counsel

/s/
David J. Shaffer #413484
Assistant General Counsel
600 Fifth Street, N.W.
Washington, D. C. 20001
(202) 962-2820

As amended,February 27, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Supplemental Response to Requests for Admissions**, was electronically transmitted on February 27, 2008 and hand delivered on February 27, 2008 to:

Nathaniel Johnson, Esq.
201 Centennial St.
LaPlata, Md. 20646

/s/
David J. Shaffer