**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TAJ WILSON | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    05-2146 (GK/AK) |
| | ) |
| WASHINGTON METROPOLITAN | ) |
| AREA TRANSIT AUTHORITY | ) |
| | ) |
| Defendant. | ) |
| | ) |

**WMATA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

This is a Title VII case brought by a former WMATA Transit Police Officer who

alleges that he was terminated because of his race, black, and sex, male.  He also

alleges a racially hostile work environment and retaliation for complaining about an

incident at a non-WMATA training academy prior to being sworn as a WMATA Transit

Police Officer.

What this case is really about is that plaintiff was never suited to be a police

officer; he repeatedly engaged in conduct in violation of WMATA's General Orders, lied

in investigations of misconduct, violated his Oath of Office and endangered public

safety with incidents involving his gun and serious traffic accidents.  WMATA had

strong legitimate, nondiscriminatory reasons for his discharge.  Nonetheless, it is

unnecessary for the Court to delve into the merits of these charges except only to

compare the severity of them to charges made against, and discipline given to,

nonblack and female officers, none of whom engaged in offenses as serious as that of

1

plaintiff. Such a comparison will amply illustrate plaintiff's inability to produce sufficient

evidence for a reasonable jury to find that WMATA intentionally discriminated against

Plaintiff. Brady v. Sergeant of Arms, 2008 U.S. App. LEXIS 6460, *10, Slip Op. No. 06-

5362 (D.C. Cir. March 28, 2008)(hereinafter "Brady").   The undisputed facts

demonstrate that WMATA's action was motivated by its honest belief in the facts upon

which it took the disputed action.  Under Brady, at *13, it need do no more.

Moreover, Plaintiff's case has numerous procedural flaws, such as plaintiff's

failure to exhaust his administrative remedies on the sex and hostile environment

claims, Park v. Howard University, 71 F.3d 904 (D.C. Cir. 1995), and the lack of

temporal proximity between the alleged protected activity and the discipline first

imposed, as required by the Supreme Court in Clark County School Dist. v. Breeden,

532 U.S.  268 (2001).  The sex and hostile work environment claims must be dismissed

on these procedural grounds alone (as well on plaintiff's inability to overcome WMATA's

legitimate, nondiscriminatory motives for the discharge).

## I.     STATEMENT OF FACTS

Plaintiff began his employment with the Metro Transit Police Department (MTPD)

on January 14,2002.  Statement of Material Facts not in Dispute ("**SMF ") 3**.  After

completion of his training at the Northern Virginia Criminal Justice Training Academy

and the Maryland Police Training Commission, plaintiff took the oath of office in the

MTPD on September 24, 2002.  **SMF 4..**  Plaintiff was assigned to field training from

September 2002 to December, 2002.  **SMF 5.**  During his tenure with MTPD, plaintiff

was involved in numerous disciplinary actions, all of which impugned his veracity, which

is a serious matter for a police officer.  He was terminated less than two years after he took his oath of office.

      A.    <u>Plaintiff's Wal-Mart Incident with His Service Revolver</u>

      Slightly in excess of one year after taking the oath of office, plaintiff was involved in his first disciplinary action.  On December 3, 2003, plaintiff was the passenger in a vehicle operated by his girlfriend, Lovoncye Shannon.  **SMF 6.**   Although plaintiff was wearing his holster at the time, he placed his MTPD issued service revolver in an unlocked glove compartment in violation of General Order 131.  **SMF 9, and Exhibit 5 thereto.**  While in a WalMart parking lot, plaintiff's girlfriend became involved in an altercation with another motorist, Billy Little, over a parking space.  **SMF 6.**  Plaintiff engaged the other motorist and displayed his service revolver without identifying himself as a police officer.  **SMF 7,8.**

      Mr. Little reported the incident to the Prince Georges County police who responded to the scene.  After being found by the Prince Georges County police, plaintiff identified himself as an MTPD officer.   Mr. Little filed a complaint with MTPD. An investigation was conducted by Captain George Heilmann of the Office of Professional Responsibility and Investigations.  **SMF I0.**  Captain Heilmann interviewed plaintiff, Mr. Little and Mr. Little's girlfriend, Cynthia Crawford.  **SMF II, 12.**  Ms. Shannon  was unavailable to be interviewed.  **Id.**

      Captain Heilmann's investigation resulted in three sustained charges against plaintiff.  **SMF 13.**  The first two charges related to the abuse of plaintiff's service revolver in violation of General Order 131, i.e., (Exhibit 7) leaving the service revolver in

an unlocked glove compartment (Charge 1) and not wearing the weapon in an approved holster (Charge 2).  **SMF 19, 20.**  These two charges were combined.  **Id.**  Plaintiff received a written reprimand for these violations.  **Id.**  The third sustained charge found that plaintiff failed to identify himself as a police officer and that the citizen was required to summon the Prince Georges County Police in violation of General Order 217.  **SMF 16 and  Exhibit 8.**  Plaintiff received a one day suspension for this violation.  **Id.**  In reaching his determination, Captain Heilmann concluded that plaintiff's version of events was less likely than the version recounted by Mr. Little and Ms. Crawford.  **SMF 17.**  Heilmann concluded that, if plaintiff was in fear of his safety as plaintiff claimed, a reasonable police officer would have readied his weapon by chambering a round which plaintiff expressly denied doing.  **Id.**  This was the first incident where plaintiff was deemed to be not credible.

B,     Plaintiff's First Motor Vehicle Accident

Less than six months later, plaintiff was the subject of another disciplinary action. On May 4, 2004, plaintiff was involved in a motor vehicle collision while operating his MTPD scout car.  **SMF 18.**  The accident resulted in injuries to both plaintiff and the operator of the vehicle which was struck.  **SMF 19.**  The damage to the MTPD scout car was $14,000.  **SMF 20.**

This incident was investigated by Sergeant Helen Acton.  **SMF 21.**  Sergeant Acton concluded that "[plaintiff's] claim that the light was yellow is inconsistent with the evidence".  **SMF 22.**  This was the second time that an MTPD investigation found plaintiff to be less than credible.  Plaintiff received a one day suspension for this

incident.  **SMF 23.**

    C.    <u>Plaintiff's Second Incident with His Service Weapon – Failure to Secure His Weapon at a Party</u>

Approximately two months later, plaintiff was the subject of another disciplinary investigation involving his service revolver.  **SMF 24.**  On June 13, 2004, while off-duty and visiting his girlfriend, plaintiff attempted to break up an altercation.  **SMF 25.**  During this incident, an unknown person tried to grab plaintiff's service revolver.  **Id.**  An investigation conducted by Captain Heilmann concluded that plaintiff's actions were appropriate but, nevertheless, questioned some of plaintiff's actions.  **SMF 26.**  Captain Heilmann's report stated: "It does not seem reasonable that [plaintiff] did not pursue identification of the person who tried to steal his gun in what may have been a deadly force situation.  He has also not provided a logical reason why he could not identify who that person was.".  **Id.**  The next sentence of Captain Heilmann's report notes a possible reason for plaintiff's failure to seek identification of the person who tried to take his service revolver: "Again, some testimony from unverified witnesses said it was his girlfriend who tried to take his weapon.".  **Id.**  Captain Heilmann recommended that the complaint be unfounded but that plaintiff receive remedial training in weapon retention and additional training on proper judgment and behavior when carrying his weapon off-duty.  **SMF 27.**

    D.    <u>Plaintiff's Incident Being Out of Service and Further Incidents with His Credibility.</u>

Five days later, plaintiff was involved in yet another disciplinary incident.  On June 18, 2004, while on duty, plaintiff was informed that his girlfriend was involved in a

motor vehicle accident with plaintiff's automobile. **SMF 28.** Without receiving permission, plaintiff left his assigned sector to attend to this matter. **SMF 29.** In an effort to cover up his absence, plaintiff submitted an inaccurate run sheet.[1] **SMF 30, 37.**

This incident was investigated by Captain Heilmann. **SMF 31.** During the course of this investigation, plaintiff admitted that he left his sector but stated that he was absent from his sector for only 10 or 15 minutes. **SMF 30.** Captain Heilmann's investigation concluded that this statement was false and that plaintiff remained at the location of the motor vehicle accident for more than an hour without anyone from MTPD knowing his whereabouts. **SMF 32.**

Captain Heilmann's investigation also determined that plaintiff gave false information to the dispatcher in order to cover up his absence from his sector. **SMF 36.** Finally, Captain Heilmann concluded that plaintiff failed to summon the local police even though the gravity of the situation called for such action. **SMF 35.**

The June 18, 2004 incident resulted in nine sustained charges against plaintiff. **SMF 37.** Charge 1 found that plaintiff violated his oath of office for the reasons outlined in Charges 2-9. **SMF 38.** Plaintiff received a two day suspension for this violation. **Id.**

Charge 2 found a violation of General Order 217 (Exhibit 8) in that plaintiff made false entries on his run sheet in two respects: (1) by claiming that he was at the Navy Yard station when, in fact, he was attending to personal business in Prince Georges County and (2) by entering two entries 30 to 45 minutes earlier than those

---

[1]     A "run sheet" is essentially a time shett accounting for plaintiff's acitivities on duty.

6

runs were assigned to him. **SMF 39(a)(b).** In the apparent attempt to cover up his

whereabouts, Captain Heilmann's report notes that plaintiff made his run sheet entries

prior to the time when he was absent from his sector attending to personal business

were accurate. **SMF 39(d).** Plaintiff received a two day suspension for this violation.

Charge 3 also found a violation of General Order 217. **SMF 40(a).** It specified

that plaintiff gave false information to the dispatcher. **SMF 40(b).** Plaintiff received a

two day suspension for this violation. **SMF 40(c).** Charge 4 also found a violation of

General Order 217 in that plaintiff falsely reported to Captain Heilmann that plaintiff was

absent from his sector for only 10 or 15 minutes when, in fact, plaintiff was absent from

his sector in excess of one hour. **SMF 41(a)(b).** Charge 5 found a violation of General

Order 105, Exhibit 14, in two respects: (1) plaintiff's activities while on duty were not

related to the protection of WMATA customers, personnel, and transit facilities and (2)

plaintiff failed to summon the local police even though the situation called for it. **SMF

42a)-(c).** Plaintiff received a one day suspension for this charge which was combined

with the penalty assessed for Charge 6. **SMF 42(d).**

Charge 6 found a violation of General Order 217 in that, when United States

Park Police Sergeant Michael Snowden arrived at the scene of the motor vehicle

accident, plaintiff failed to advise Sergeant Snowden about plaintiff's personal

involvement in the accident and failed to advise Sergeant Snowden that plaintiff's

girlfriend was involved in the accident. **SMF 43.** This lack of candor on the part of

plaintiff jeopardized the safety of Sergeant Snowden. **SMF 43(d).** Plaintiff received a

two day suspension for this charge which was combined with the suspension assessed

for Charge 5.  **SMF 42(d) and 43(e).**

Charge 7 found a violation of General Order 215 in that plaintiff left his assigned sector without authorization or knowledge of any supervisor or Communications Division.  **SMF 44.**   Charge 8 found a violation of General Order 215 in that plaintiff absented himself from his beat for over an hour in order to attend to personal business.  **SMF 45(a)(b).** Charge 9 found a plaintiff violated General Order 215 by leaving his assigned sector to attend to personal business without permission.  **SMF 46(a)(c), Exhibit 15).**   Plaintiff received a two day suspension for this violation which was combined with the suspension received for Charges 7 and 8.  **SMF,32, 44 and 47(d).**

Plaintiff's total suspension for the incident of June 18, 2004 was 11 days.  In recognition of his repeated failure to provide candid and truthful information, Chief Hanson notified plaintiff that he would be terminated from WMATA should he have future integrity issues.  **SMF 47.** Two months after this incident, where he falsified a document to cover up that he was out of sector, the final incident which led to his termination occurred.

E.     <u>The Straw that Broke the Camels' Back – Plaintiff's Second Motor Vehicle Accident and Further Credibility Issues.</u>

Approximately two months later, plaintiff was involved in another disciplinary incident.  This incident was the second involving a serious accident while operating an MTPD scout car, and the culmination of the series of incidents involving plaintiff's veracity and actions endangering public safety.

On August 15, 2004, plaintiff and Officer Scott Bird were on duty at the Addison Road Metrorail station.  Plaintiff and Officer Bird monitored a radio run for a fight in

progress at the New Carrollton Metrorail station. **SMF 48, 49.** Both officers entered their respective scout cars and proceeded to the New Carrollton station with plaintiff in the lead. **SMF 49.** While traveling in the 6000 block of Addison Road, plaintiff's scout car swerved to the right and struck a curb. **SMF 50.** Plaintiff lost control of his scout car. **SMF 51.** The scout car became airborne, left the roadway, and struck a residence located at 6004 Addison Road. **Id.**

The posted speed limit in the 6000 block of Addison Road was 30 miles per hour. **SMF 59.** The weather was clear. **SMF 58.** There was no fog. **SMF 59.** Road conditions were dry. **SMF 57.** There were no obstructions in the roadway. **SMF 60.**

Officer Bird came to plaintiff's assistance. While attempting to extricate plaintiff from his scout car, Officer Bird observed that the air bag had deployed, that plaintiff was unconscious and that plaintiff was not wearing a seat belt. **SMF 53.**

Plaintiff's WMATA issued scout car was a total loss. **SMF 62.** The residence located at 6004 Addison Road was condemned by Prince Georges County building inspectors. **SMF 63.** An investigation conducted by the Prince Georges County Police Department determined that plaintiff was at fault for the accident. **SMF 63.**

Prince George's County Sergeant Proctor took a statement from plaintiff on the day of the accident. **SMF 64.** In that statement, plaintiff stated he was traveling between 45 and 50 miles per hour at the time of the accident. **Id.** Plaintiff claimed that he swerved to avoid an oncoming vehicle which had entered his lane of travel. Plaintiff also claimed that he was wearing his seat belt. **SMF 52.** In a statement given to Lieutenant Olson on August 26, 2004, plaintiff stated he was traveling between 45 and

9

55 miles per hour at the time of the accident.  **SMF 65.**  Plaintiff later admitted he was traveling between 60 and 70 miles per hour.  **SMF 66.**

Photographs were taken of the scene.  The photographs revealed skid marks traceable to plaintiff's scout car in the lane for oncoming traffic thereby showing that plaintiff had veered his scout car into the lane of oncoming traffic.

An internal investigation was conducted by MTPD Lieutenant Doody.  **SMF 67.** As part of the investigation, Lt. Doody inspected plaintiff's scout car along with a Prince Georges County police officer.  **SMF 54**.  The event data recorder was removed from the scout car.  **SMF 55.**  A review of the event data recorder revealed that plaintiff's seat belt was not engaged at the time the airbag deployed. **Id.**  Further inspection of the scout car revealed that the seat belt was working properly.  **SMF 54.**

Lt. Doody's investigation resulted in seven sustained charges.  **SMF 68.**  Charge 1 charged violation of the oath of office for the reasons set forth in Charges 2-7.  **SMF 69(a)(b).** Plaintiff was terminated for this violation.  **SMF 69(c).**

Charge 2 found violation of General Order 217 in that plaintiff gave a false statement during an investigation, namely, that plaintiff stated he was wearing a seat belt when the event data recorder and Officer Bird's statement proved otherwise.  **SMF 70(a)(b).**  Officer Bird also stated that there was no oncoming vehicle.  Plaintiff was terminated for this charge.  **SMF 71.**

Charge 3 found violation of General Order 217 in that plaintiff gave false statements regarding his speed of travel as well as the exact events which caused the accident.  **SMF 72(a)(c).**  Plaintiff was terminated for this violation.  **SMF 71(c).**

10

Charge 4 found a violation of General Order 217 in that plaintiff made three false statements during the course of the investigation: (1) relating to speed, (2) statements about an oncoming vehicle, and (3) wearing his seatbelt.  **SMF 72(a)(b).**  The statements as to his speed were proven false by plaintiff's subsequent admission that he was traveling 60-70 miles per hour.  Plaintiff's statements regarding the oncoming vehicle were also disproved by the photographs of the skid marks and Officer Bird. Plaintiff's claim that he was wearing a seat belt were proven false by the event data recorder and by the statements of Officer Bird.  Plaintiff was terminated for this violation.  **SMF 72(c).**

Charge 5 found a violation of General Order 306 in that plaintiff operated his scout car at a high rate of speed and failed to maintain his lane without due regard for safety.  **SMF 73(a)(b).**  Plaintiff received a two day suspension for this violation.  **SMF 73(c).**

Charge 6 found a violation of General Order 306 in that plaintiff operated his scout car at a high rate of speed without regard to life and property.  **SMF 72(a)(b).** Plaintiff received a one day suspension for this violation.  **SMF II, 72(c).**

Charge 7 found a  violation of General Order 306 in that plaintiff failed to wear a seat belt.  **SMF 75(a)(b).**  Plaintiff received a one day suspension for this violation. **SMF II, 75(c).**

Plaintiff was terminated for the culmination of these incidents which occurred over a short period of time.  **SMF 76.**  An arbitrator denied plaintiff's grievance under the collective bargaining agreement process and upheld plaintiff's termination for good

cause,  citing plaintiff's repeated false statements.  **SMF 77, Exhibit 32.**

ii.     STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is appropriate whenever the pleadings, depositions, answers to interrogatories and admission on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  Once the moving party makes the initial showing that no issue exists as to any material fact, the burden shifts to the opposing party to demonstrate the existence of a material factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Plaintiff, as the non-moving party, is required to provide evidence that would permit a reasonable jury to find in his favor.  Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  In ruling upon a Summary Judgment motion, all reasonable inferences that may be drawn from the facts in the record must be drawn in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for Summary Judgment by responding with some factual showing to create a genuine issue of material fact.  Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993).  Mere conclusory allegations are insufficient to raise a genuine issue of material fact and defeat entry of Summary Judgment.  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).

In considering this motion, this court must be mindful that plaintiff may not proceed simply because someone might conclude that a lesser penalty would have been appropriate.  The court may not "second-guess an employer's personnel decision absent demonstrably discriminatory motive."   Fischbach v. District of Columbia

12

Department of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  The D.C. Circuit cautions that federal anti-discrimination laws do not authorize courts to become "a super-personnel department that reexamines an entity's business decisions." Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (citing and quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986), cert. denied 479 U.S. 1066 (1987))

_____ A plaintiff's mere speculations are insufficient to create a genuine issue of fact to avoid summary judgment.  In Brown v. Brody, 199 F.3d 446, 459 (D.C.Cir. 1999), the court faulted the plaintiff for providing nothing beyond her own speculations, holding that  "a plaintiff's mere speculations are insufficient to create a genuine issue of fact" regarding [an employer's articulated reasons for [its decisions] and avoid summary judgment."  In McGill v. Munoz, 203 F.3d 843, 846-7 (D.C.Cir. 2000),  the court reversed a jury verdict finding  that evidence that others might be away from their desks for as long as plaintiff, was speculative, and that speculation is insufficient to support a jury verdict and to defeat summary judgment.  203 F.3d at 846.   See also, Schultz v. General Electric Capital Corp., 37 F.3d 329, 334 (7th Cir. 1994) ("employee's own self-servicing remarks standing alone are insufficient to raise doubts as to the credence of the employer's explanation for termination").  Based on this standard and on the record of this case,

III.    ARGUMENT

_____ A.    Plaintiff Failed to Exhaust His Administrative Remedies on Sex Discrimination or Racially Hostile Work Environment.

Plaintiff's Charge to the EEOC alleged only discrimination due to race and retaliation.  See Exhibit 1 to **SMF**.  He further states in his Charge that the alleged

discriminatory acts occurred only between October 1, 2004 and November 12, 2004, the latter date being the date of his termination and the former date being the inception of the investigation into his second motor vehicle accident.   Although plaintiff stated, in his deposition, that he attempted to contact the EEOC regarding further facts, he has failed to come forward with anything but conclusory statements of such attempts – he has no evidence, which is insufficient to resist summary judgment.  See Green v. Dalton, supra at 675.

The law on exhaustion of administrative remedies in this Circuit is clearly set forth in Park v. Howard University, 71 F.3d 904 (D.C. Cir. 1995).  In Park the plaintiff filed a Charge with the EEOC alleging sex and national origin discrimination.  She filed originally in District Court on these grounds, but filed an Amended Complaint alleging a hostile work environment.  The D.C. Circuit held that " [a] title VII lawsuit following the EEOC charge is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations."  Id. at 907.   The Court found that the "administrative charge . . . did not express or even hint at a national origin hostile work environment claim." Id.  The Court further found that the charge "not only lacks the words 'hostile work Environment,' but also lacks any factual allegations supporting such a claims."  Id.   The Court therefore concluded that her claims for hostile work environment were barred for failure to exhaust  In Kidane v. Northwest Airlines, Inc. 41 F.Supp.2d 12 (D.D.C.1999) plaintiff's retaliation claim was barred for failure to exhaust administrative remedies, where his EEOC complaint only alleged discrimination based on race and national origin. In Caldwell v. ServiceMaster Corp., 966 F.Supp. 33 (D.D.C.1997), sex discrimination allegations were dismissed because

14

they were never brought to the EEOC's attention by plaintiffs. "An allegation of race-based discrimination does not, by itself, include an allegation of sex discrimination; these allegations are discrete, and they must be identified specifically and separately." In Hunt v. District of Columbia Dept. of Corrections,  41 F.Supp.2d 31 (D.D.C.1999), the claim of gender discrimination was dismissed because Dr. Hunt failed to exhaust her administrative remedies on this claim, as she specifically checked the boxes for age discrimination and retaliation, but she did not check the box for gender discrimination and there was nothing within the EEOC claim form indicating that Dr. Hunt was alleging gender discrimination.  The same result must be reached in the case at hand.  Plaintiff failed to allege either sex discrimination or hostile work environment in his Charge before the EEOC or allege any facts upon which the EEOC could reasonably have been put on notice of such claims.  Accordingly, the sex and racially hostile work environment claims must be dismissed.

     B.    Plaintiff Has Failed to Establish Facts that Would Support a Jury Determination of Discrimination

     1.    The standard for summary judgment under *Brady*

The D.C. Circuit last week in Brady has reinforced the standard for summary judgment in a Title VII case:

> [I]n considering an employer's motion for summary judgement. . . the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis s of race. . .

Brady, at *9-10.

The Brady court discussed several methods in which the plaintiff may do this: (1) showing that similarly situated persons of a different race received more favorable treatment; (2) showing that the employer lied about the underlying facts or (3) showing that the employer did not follow its rules. Id. at *13-14. None of these can be proven by plaintiff in the case at hand.

WMATA overwhelmingly meets its burden of providing a legitimate, nondiscriminatory reason for Plaintiff's termination, by demonstrating plaintiff's history of serious misconduct and rule violations. Plaintiff has nothing to rebut this and therefore his allegation of unlawful termination based on race in violation of Title VII should be dismissed. Plaintiff cannot show that nonblack MTPD officers were subjected to different standards of discipline than was he. As set forth below– all of his comparators engaged in less serious offenses. There are no MTPD officers who engaged in such poor conduct within two years of service.

2.    None of Plaintiff alleged comparators were treated differently

Plaintiff claims that there are six persons who were similarly situated to him who were not subject to the same discipline as was he. Plaintiff's Answers to Interrogatories, Exhibit 29. These six are: Steven Morrison, Jason Williams, Julie Musitano (Dronsfield), Scott Bird, Tommie Call, and Thomas Stolz. **SMF 78.** None of these individuals are similarly situated to plaintiff. Plaintiff also lists in response to Interrogatory No. 4, two individuals that were disciplined, but does not contend that they were treated differently. Compare Interrogatories 1 and 3 with Interrogatory 4.

### a.     Sergeant Tommie Call

Sergeant Tommie Call, a white male, is a 22 year veteran of MTPD.  **SMF 79, 80.**
He has had only two disciplinary violations.  **SMF 81.**  In 2001, Sergeant Call was
reprimanded for using profanity toward a citizen.  **SMF 82.**  In 2006, Sergeant Call was
found to be negligent in his duties when he failed to adhere to the collective bargaining
agreement in assigning overtime.  **SMF 82.**  Sergeant Call received a three day
suspension for this latter violation.  **SMF 84.**   Neither incident involved deception and
neither compromised public safety.  Neither incident was remotely similar to the conduct
for which plaintiff was disciplined.  Sergeant Call had only two violations in 22 years as a
police officer.  Plaintiff had 5 violations in less than a year, most of which impacted
public safety or veracity.

### b.     Officer Julie Musitano (Dronsfield)

Former officer Julie Musitano (Dronsfield) is a white female.  **SMF 87.**  She is
plaintiff's only female comparator.   Her sole violation involved a failure to safeguard
prisoner property.  **SMF 89-90.**  Officer Musitano was found to have failed to safeguard
prisoner property and failure to ensure that prisoner property was returned to the rightful
owner.  **SMF 91.**  She received a two day suspension for the former violation and a one
day suspension for the latter violation.  **Id.**  The investigation specifically determined that
Officer Musitano was not being deceptive.  **SMF 19.**  Officer Musitano's situation is
markedly different than plaintiff because Officer Musitano had one disciplinary incident
involving two violations whereas plaintiff had five incidents and a myriad of violations all
occurring over a short period of time.   Also, Officer Musitano was not found to have

engaged in deception.

c.    Officer Steven Morrison

Officer Steven Morrison is a white male.  **SMF 94.**  He has had only one disciplinary violation.  **SMF 98.**  Officer Morrison was found to have taken leave without reporting it in his position as an instructor with the Northern Virginia Criminal Justice Training Academy.  **SMF 97.**  For this, Officer Morrison was found to have brought discredit to the department.  **SMF 97.**  He was given a three day suspension.  **SMF 98.** He is not similar to plaintiff because he had only one violation and that violation did not impair the safety of the public.

d.    Officer Jason Williams

Officer Jason Williams is a white male.  **SMF 100.**  He has had two disciplinary violations.  **SMF 102.**  On September 13, 2003, Officer Williams transported a female crime victim to her home.  He made false entries on his run sheet to cover up this activity.  **SMF 103**.  This action resulted in four sustained charges against Officer Williams: failure to devote full time and attention to the business of the department, failure to provide the Communications Division with an odometer reading prior to and following the transport of a person of the opposite sex, knowingly making a false statement, and failure to perform duties impartially, without favor or affection or ill will, and without regard to status, sex, race, religion, political belief or aspiration.  **SMF 104.** Officer Williams received a one day suspension for each charge and was removed from mobile patrol.  **SMF 105.**

In a second incident, on March 10, 2005, Officer Williams conducted an unlawful

traffic stop.  **SMF 106.**  The stop was unlawful in that it was outside MTPD's jurisdiction.

He received a six day suspension and a reprimand for this violation.  **SMF 107/**

Officer Williams' combined actions were not similar to plaintiff's combined

misdeeds  Although Officer Williams was suspended for four days as opposed to

plaintiff's eleven day suspension, Officer Williams was also removed from mobile patrol.

In addition, plaintiff's actions warranted more serious punishment because plaintiff

endangered the safety of Sergeant Snowden, provided false information to the

investigating official, and was plaintiff's fourth violation in eight months.

With respect to Officer Williams' second violation, there is no similar violation on

the part of plaintiff.

e.    Officer Thomas Stolz

Officer Thomas Stolz is a white male.  **SMF 108.**  He has had three violations.

Two were minor infractions (failure to possess credentials and sleeping in the

Corporation Counsel's office) neither of which impacted public safety and for which

Officer Stolz received reprimands.  **SMF 111,**  The third was a traffic accident for which

he received a one day suspension.  **SMF 112.**  The two minor infractions were dissimilar

to any violations committed by plaintiff and did not involve veracity.  The motor vehicle

collision was similar to plaintiff's first accident.  Both plaintiff and Officer Stolz received

identical one day suspensions for their first traffic accidents.

f.    Officer Bird


_____Officer Scott Bird is a white male. who was a member of the Metro Transit Police

19

from December 17, 2001 to October 13, 2007. when he resigned his position. **SMF 114,**

**115.** Officer Bird had only one disciplinary violation for accidental discharge of a firearm,

for which he was suspended three days. **SMF 116, 117.**.

g.  Kenneth Honick

Kenneth Honick is a white male who has been a member of the Metro Transit

Police since April 14, 2003. **SMF 120.** During this time, Officer Honick has received two

disciplinary violations. **SMF 121.** On December 25, 2004, Officer Honick was involved in

a motor vehicle accident with a police vehicle. He received a one day suspension for

this violation. **SMF 122.**

On June 24, 2005, while assisting Officer Burkholder in a traffic stop, Officer

Honick failed to notify the Communications Division of his whereabouts. He received a

reprimand for this violation. **SMF 123.**

h.  Robert Burkholder

Robert Burkholder is a white male who has been a member of the Metro Transit

Police since August 24, 1997. **SMF 125,126.** During this time, Officer Burkholder has

had eleven disciplinary violations. **SMF 127.**

Officer Burkholder received a dereliction for failure to reinspect the prisoner

transport area of his patrol vehicle following the transport of a prisoner on December 11,

1998. He received counseling for this violation and was removed from solo patrol and

assigned to work alongside seasoned officers for a month in order to gain positive

influence and a better understanding of police work. **SMF 128.**

Officer Burkholder received a one day suspension for a April 7, 1999, motor

vehicle accident involving his police vehicle. **SMF 129.**

Officer Burkholder was counseled for use of profanity on December 27, 1999.  He was also ordered to undergo additional training in communicating with tact.  **SMF 130.**

Officer Burkholder was formally counseled for rudeness to another WMATA employee on February 8, 2001.  **SMF 132.**

Officer Burkholder received a one day suspension for a minor motor vehicle accident occurring on April 4, 2001. **SMF 133.**  There was no property damage.

Officer Burkholder received a one day suspension for a minor motor vehicle accident occurring on December 29, 2003. **SMF 135.**

Officer Burkholder was counseled for conducting a traffic stop while engaged as a rail canine explosives team member on January 25, 2005 **SMF 137.**

Officer Burkholder received a one day suspension for conduct unbecoming of an officer arising out of a traffic incident on April 29, 2005.  **SMF 138.**

Officer Burkholder received a one day suspension for the incident with Officer Honick noted above in which he was found to have left his sector without notification, failed to notify communications that he had initiated a traffic stop, and failed to notify an official that his vehicle had become disabled.  **SMF 139**.

Officer Burkholder received a four day suspension for the March 10, 2005 incident with Officer Williams noted above.  **SMF 140.**  Despite Burkholder's checkered history, plaintiff did not allege he was similarly saturated, and he was not – none of his accidents were as serious as plaintiff's and none of his disciplines involved violation of his oath of office or his veracity.  Moreover, although Officer Burkholder had three traffic

21

accidents, they were all minor, did not impose a serious threat to public safety and did not occur within an 18 month period, as did plaintiff's.   Under the collective bargaining agreement, Exhibit 31 hereto, only disciplinary incidents that occurred in the last 18 months may be considered in imposing discipline.   Plaintiff's disciplinary incidents all occurred. Within 18 months and the cumulative impact of them, especially his lack of veracity, was the cause of his firing.  The same was not true with Officer Burkholder.

           C,     Plaintiff's Hostile Work Environment Allegations Fail to State a Claim

Plaintiff alleges four incidents constituting a racially hostile work environment. First, plaintiff claims that during training a white officer refused to touch plaintiff during a drill without putting on gloves even though the white officer touched other white officers without wearing gloves.  Plaintiff brought this matter to the attention of MTPD officials who responded to his complaint.  Second, plaintiff claims that, during roll call, white officers would often refer to Anacostia as "Animal Costia".  Plaintiff did not bring this matter to the attention of MTPD officials.  Third, white officers would repeatedly make slurs to him and would often refer to plaintiff and other black officers as a gang.  Plaintiff did not bring this matter to the attention of MTPD officials.  Last, the former MTPD Chief statement that "people like him in the department do not change" which plaintiff interpreted as a racially charged statement.  None of these incidents were listed on plaintiff's EEOC charge, and thus there was a failure to exhaust administrative remedies. These are the sole allegations of a hostile work environment.  See Exhibit 30, Wilson Depo Vol. II at 29-30.

Such allegations are insufficient as a matter of law to create a hostile work

environment.  A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice."Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). A work environment is considered "hostile" under Title VII only when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)) (internal quotation marks omitted).

To determine whether a work environment is sufficiently "hostile" to support a Title VII claim, the Court must look at the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. The "conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. Boca Raton, 524 U.S. 775, 788 (1998) (emphasis added). "[O]ffhand comments[] and isolated incidents (unless extremely serious)" do not meet this standard. Id. By ensuring that "not all abusive behavior, even when it is motivated by discriminatory animus, is actionable," Stewart v. Evans, 275 F.3d 1126, 1133 (D.C. Cir. 2002), these standards are "sufficiently demanding to ensure that Title VII does not become a general civility code." Faragher, 524 U.S. at 788 (quoting Oncale, 523 U.S. at 80) (internal quotation marks omitted). Moreover, Title VII "does not prohibit all forms of workplace harassment," but only harassment based on a person's membership in a class protected

by Title VII. <u>Stewart</u>, 275 F.3d at 1133.   Plaintiff's allegations are simply of a garden variety nature, which do not rise to the level of a hostile work Environment.

Even if four isolated incidents did constitute a hostile work environment, it is not clear on the face of these comments that they are racial in nature.   "Animal Costia" is no more than saying "it's a jungle out there," which would be an apt reference to the District's most crime-ridden area.   Chief Hansen's alleged comment had no racial overtone – it was simply a reference to not \wanting untruthful people on her police force.   Nonetheless, even if considered in the best possible light to plaintiff, such an offhand comment is insufficient as a matter of law to constitute a racially hostile work environment, especially since it occurred during his termination, not during his employment.   Moreover, it is these incidents, even if true, are so minor that a reasonable jury could not find them sufficiently severe to constitute a hostile work environment.

D.     <u>Plaintiff's Retaliation Claim is Insufficiently Close in Time to His Alleged EEO Activity to State a Claim</u>

The sole protected activity in which plaintiff engaged was complaining about the white officer while at the training academy.   Plaintiff completed the training academy on September 24, 2002.   Plaintiff's first adverse job action was his one day suspension for the incident at the WalMart parking lot.   The discipline for this incident occurred in February, 2004, 17 months later.   **See Exhibit 6.**

_____In order to establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) WMATA subjected him to adverse action or to conduct that had an adverse impact on him: and (3) there is a causal link between the protected activity and the adverse action.   <u>Forman v. Small</u>,

271 F.3d 285, 299 (D.C. Cir. 2001).  The required causal link between the protected

activity and the adverse action may be established by showing that WMATA knew of

Plaintiff's protected activity and that the adverse action took place shortly after Plaintiff

engaged in that activity.  <u>Forman</u>, 271 F.3d at 299.

　　　To qualify as a causal connection, however, the temporal proximity between the

employer's knowledge of the protected activity, and the adverse personnel action must

be "very close."   <u>Clark County Sch. Dist. v. Breeden,</u> 532 U.S. 268, 273 (2001) (noting

that a three-or four-month period between an adverse action and protected activity is

insufficient to show a causal connection, and that a 20-month period suggests "no

causality at all"); <u>Pierce v. Mansfield</u>, 530 F. Supp. 2d 146 (D.D.C. 2008). <u>See also</u>

<u>Saunders v. DiMario</u>, 1998 U.S. Dist. LEXIS 23163, at *15,(D.D.C. 1998) (stating that

"[t]he greater the time that elapses between the protected activity and the alleged acts of

retaliation . . . the more difficult it is to demonstrate any causal connection, and, absent

any other evidence, where the gap is sufficiently great, it is appropriate to grant

judgment as a matter of law" (citation omitted)); *"*Although courts have not established

the maximum time lapse between protected title VII activity and alleged retaliatory

actions of purposes of establishing causal connection, courts generally have accepted

time period of a few days up to a few months and seldom have accepted time lapses

outside of a year in length." <u>Bredeztski v. Duffey</u>, 199 F.R.D. 13, 20 (D.D.C. 2001).

　　　In the present action, Plaintiff has failed to produce sufficient evidence from which

a finder of fact may determine the existence of a causal connection between Plaintiff's

protected activity and the alleged employment action.  Alternatively, he cannot

demonstrate that WMATA's articulated reasons for terminating him were pretextual.

Consequently, Plaintiff's allegation of retaliation in violation of Title VII should be

dismissed.

      E.     <u>Plaintiff Fails To Show Evidence of Pretext</u>

      The D.C. Circuit has held that in Title VII discrimination case, if the employer has

articulated a non-discriminatory reason for its action, "the issue is not the correctness or

desirability of the reasons offered but whether the employer honestly believes in the

reasons it offers." <u>Fischbach v. District of Columbia Department of Corrections</u>, 86 F.3d

1180, 1183 (D.C. Cir. 1996) (citations omitted).  This principle was strongly reinforced in

<u>Brady</u>: "If the employer's stated belief about the underlying facts is reasonable in light of

the evidence, however, there ordinarily is no basis for permitting a jury to conclude that

the employer is lying about the underlying facts.  <u>Brady</u> at *13.  One of the most

important aspect of a police officer's conduct is his adherence to his oath of office and

his veracity.  In the case at hand, WMATA had abundant cause to doubt plaintiff's

veracity and could no longer legitimately employ him as a Transit Police Officer.  Once

WMATA has articulated a legitimate, nondiscriminatory reason for plaintiff's discharge, it

is plaintiff's burden to come forward with evidence of pretext – either by showing that the

stated reasons were not true or that similarly situated persons were treated differently,

Plaintiff cannot meet this test.  The legitimate, nondiscriminatory reasons for the

discharge were aptly summarized by the Arbitrator on plaintiff's grievance:

> The Grievant's false statements regarding the incident on
> August 15 appear to be part of a disturbing and consistent
> pattern.  The Grievant becomes invovles [sic] in situations
> where he has not conducted himself in an exemplary
> manner, and then he gives false accounts of his conduct.  He

26

has amply demonstrated that WMATA cannot rely on him to be truthful concerning his official conduct. As a sworn police officer, the Grievant must frequently be available to testify in judicial proceedings. Because of his record of untruthfulness, the Grievant's credibility as a witness would be seriously impaired. Under these circumstances, WMATA had just cause to remove the Grievant.

Exhibit 32 at 13.

_____IV.    **CONCLUSION**

Plaintiff failed to exhaust his administrative remedies on his sex and hostile work environment claims and they must be dismissed on these grounds alone. Plaintiff's race and sex discrimination claims fail by reason of his inability to show any similarly situated persons that were treated differently or that WMATA's stated reasons were pretextual. Plaintiff's hostile work environment claim is comprised of four isolated alleged racial comments and is therefore insufficient to establish the extreme conduct required by the Supreme Court and this Circuit. Lastly, his retaliation claim fails because his alleged EEO activity – complaining about the incident at the training academy -- is not sufficiently causally linked to the time the first discipline that was imposed over 17

months later.  Summary judgment should be granted on all four counts of plaintiff's

complaint in favor of WMATA.


Respectfully submitted,

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

Carol B. O'Keeffe, #445277
General Counsel

Bruce P. Heppen #252171
Deputy General Counsel


_____/s/_____
David J. Shaffer, #413484
Assistant General Counsel
WMATA
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-2820
Attorneys for Defendant WMATA