UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAJ WILSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 05-2146 (GK/AK) |
| ) | |
| WASHINGTON METROPOLITAN ) | |
| AREA TRANSIT AUTHORITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

**WMATA'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Summary of Argument.

After Defendant WMATA filed a comprehensive Motion for Summary Judgment ("MSJ") on all of plaintiff's claims, plaintiff has abandoned the gender discrimination, hostile work environment and retaliation claims. He now attempts to avoid summary judgment on the sole remaining claim of disparate treatment by claiming disparate treatment compared to now three Caucasian officers.

The bottom line is that plaintiff utterly fails to appreciate the seriousness of his wrongful acts, but claims that others who were white should have been fired for their acts as well. The facts will show that those other three white officers were not similarly situated. In order to establish disparate treatment, plaintiff must "demonstrate that *'all of the relevant aspects* of [his] employment situation were *nearly identical* to those of the [allegedly comparable]' employee". Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999)(quoting Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C.

1

Cir. 1995)) (emphasis added). An analysis of the incidents claimed by plaintiff to be comparable readily demonstrates that they are substantially different and qualitatively less egregious from the misconduct engaged in by plaintiff in number, in kind and in timing.

The D.C. Circuit has recently reaffirmed the standard that plaintiff must meet to defeat an employer's Motion for Summary Judgment in Brady v. Sergeant at Arms, 620 F.2d 490, 494 (D.C. Cir. 2008):

> Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race. . .?

Plaintiff's Opposition (Pl. Opp.) fails to defeat WMATA's summary judgment motion under Brady in three key aspects:

1. Plaintiff mischacterizes the nature of his disciplines – he was terminated for more than violations relating to his veracity, but also for reasons relating to public safety;

2. Plaintiff fails to acknowledge that his numerous violations occurred in a short period of time;

3. Plaintiff's violations are different in kind as well as number from those of the three alleged comparators.

I.   <u>Plaintiff was terminated for more than "violations speaking to his veracity", but also for violations implicating public safety.</u>

In his attempt at comparison, plaintiff commences with an erroneous premise that he was terminated only for "violations speaking to his veracity". Pl. Opp. at 6. As

2

the record amply shows, plaintiff was terminated for more than his history of untruthfulness. Plaintiff's short tenure with the Metro Transit Police Department was replete with incidents where plaintiff endangered the safety of others *and* then lied to cover up his transgressions.[1] Plaintiff was involved in two incidents where he misused his service revolver. He was involved in two serious accidents with his official police vehicle, the former of which destroyed his scout car and the latter of which destroyed not only a second scout car but a residence as well. Plaintiff was more than an untruthful police officer. Plaintiff was a danger to the community. Plaintiff's alleged comparators did not present such a danger.

    II.    <u>Plaintiff had more violations than his alleged comparators in a shorter period of time.</u>

The second fatal flaw in plaintiff's argument is that he ignores the sheer number of his sustained violations.[2] Officers Burkholder, Williams or Musitano did not have as many disciplinary violations within such a short period of time as plaintiff. By the standard enunciated in <u>Holbrook</u>, Officers Burkholder, Williams and Musitano are not comparable to plaintiff.

Plaintiff further fails to consider the rapid succession of his misconduct. In his first incident of misconduct, plaintiff, while off-duty, displayed his service weapon during

---

[1] This was acknowledged by the arbitrator in sustaining plaintiff's termination. "The Grievant becomes involves [sic] in situations where he has not conducted himself in an exemplary manner, and then gives false accounts of his conduct." Exhibit 32 at 13. MSJ at 26-27.

[2] A "sustained" violation is simply one in which the evidence is sufficient to support the allegation. General Order 231 (08/15/03).

an altercation at a WalMart parking lot without identifying himself as a police officer.[3] <u>Five months</u> later, plaintiff was involved in a serious accident with his official police vehicle that totaled the car. <u>Six weeks</u> later, plaintiff nearly lost his service weapon while attempting to break up an altercation at a party. <u>Five days</u> after that, plaintiff left his sector to attend to personal business.[4] Finally, <u>two months</u> later, plaintiff was involved in a second vehicular collision with his official police vehicle that resulted in the destruction of, not only the scout car, but a residence as well. All these incidents occurred in an <u>eight and one-half month</u> span from December 3, 2003 to August 15, 2004. The last two incidents involved substantiated findings of untruthfulness. None of plaintiff's alleged comparators has so many and serious violations within such a short period of time.

    III.    <u>Plaintiff's violations are different in kind from those of his alleged comparators.</u>

Finally, plaintiff errs by failing to recognize that the violations committed by Officers Burkholder, Williams and Musitano were different in kind from those committed

---

[3] In his opposition, plaintiff fails to mention what is perhaps the most serious of plaintiff's actions during this incident: his display of his service revolver without identifying himself as a police officer. None of the alleged comparators has committed such a violation. Moreover, it is inconceivable that leaving his service revolver in an unlocked glove compartment and brandishing it in a dispute over a parking space were actions "consistent with the training [plaintiff] received while attending the WMATA academy" Pl. Opp. at 7.

[4] This is distinguishable from the incident where Officer Burkholder left his sector. Burkholder was in his assigned sector when he observed a motorcycle being operated in violation of local law. He pursued the vehicle outside of this sector. On the other hand, plaintiff left his sector to attend to personal business. Burkholder's violation was leaving his sector without notifying communications. Plaintiff's violation was that he left his duty post in order to engage in personal business.

by plaintiff. An analysis of those violations amply demonstrates this point.

    A.    <u>Officer Burkholder had fewer and less serious violations.</u>[5]

Plaintiff points to three incidents involving Officer Burkholder that plaintiff claims are similar to incidents for which plaintiff was disciplined more harshly. Plaintiff is patently incorrect.

Burkholder's discipline resulted from (1) assistance[6] during a traffic stop which was outside MTPD jurisdiction,[7] (2) a road rage incident that occurred while Burkholder was operating an MTPD vehicle off-duty,[8] and (3) failing to advise the communications

---

[5] Plaintiff acknowledges that he failed to identify Officer Burkholder as a comparator in his interrogatory responses. Pl. Opp. at 9, n.2. This precludes plaintiff, after closure of discovery, from claiming that Officer Burkholder is a comparator. See. Gadaleta v. Nederlandsch-Amerekaansche Stoomvart, 291 F.2d 212 (2nd Cir., 1961). Nevertheless, without waiving this position, WMATA will address the merits of plaintiff's contentions.

[6] Plaintiff states that "[Burkholder] fabricated probable cause to conduct an illegal traffic stop for improper window tint" Pl. Opp. at 10. This is incorrect for two reasons. First, Officer Burkholder did not initiate the stop. Officer Williams initiated the stop. Officer Burkholder merely acted as back-up. Second, because the motorist was not arrested, probable cause was not required. Reasonable suspicion is all that was needed for a traffic stop. Because the motorist, Chad Sparrow, admitted that his window tint violated Virginia law, it is beyond peradventure that reasonable suspicion was present and the stop was justified. Pl. Opp. Ex. D.

[7] The stop occurred outside the King Street metrorail station. It was technically not on WMATA property and, therefore, outside MTPD jurisdiction. [citation]

[8] Plaintiff incorrectly states that this incident occurred "during rush hour". Plain. Opp. at 11. The record is undisputed that the incident occurred at approximately 11:30 p.m. Pl. Opp. Ex. E, after Officer Burkholder was returning home after working a National's baseball detail. Pl. Opp. Ex. G. Plaintiff is also incorrect when he states that Burkholder falsely reported that he advised the local police via his cruiser radio. Burkholder never stated he advised the local police via his radio. He stated that he notified a Stafford County sheriff's deputy once he had exited I-95. Id. Ex. F. Presumably, this was in person. The investigating official concluded that Burkholder should have notified local authorities via radio or Nextel. The investigator concluded

5

Division when he left his sector to pursue a fleeing motorist.[9]  Officer Burkholder never misused his service revolver and was not involved in serious vehicular collisions or left his sector for personal reasons.

None of Officer burkholder's disciplinary actions resulted in a sustained finding of untruthfulness. Officer Burkholder received a total of six days suspension for these three incident.  In addition, Burkholder was removed from canine duty[10] and was denied outside employment.

Officer Burkholder's situation differs from plaintiff in the quantity of incidents, the timing and seriousness of the incidents, and the sustained findings of untruthfulness. Sustained findings of untruthfulness impair the effectiveness of a law enforcement officer's testimony at court proceedings.[11]

Plaintiff is correct in asserting that "treatment of Plaintiff was far more severe than

---

that there were conflicting accounts such that both Burkholder and the complainant could not both be telling the truth but the investigator fell short of determining who was the truthful party. [citation]

[9] Once again, there was reasonable suspicion to stop the fleeing motorist.  The motorist admitted that his vehicle was being operated in violation of Maryland law. Pl Opp. Ex. I.

[10] Contrary to plaintiff's contention, the problem with Officer Burkholder making traffic stops was not the stops *per se.*  Rather, it was the conduct of making traffic stops while assigned to a canine unit.  This activity tied up a canine in an activity for which a canine was not required.  Therefore, an inefficient use of the canine.  Chief Hanson ordered Burkholder to refrain from making traffic stops while assigned to a canine unit.  Removing Burkholder from the canine duty obviated this problem.  As noted above, there was no problem with the alleged justification of Burkholder's traffic stops.

[11] Giglio v. United States, 405 U.S. 150 (1972)(colloquially, a "Giglio problem" is an act impact an officer's veracity that may be brought out in cross-examination by defense counsel in a criminal prosecution, and implicates an officer's ability to testify.).

that of Officer Burkholder", Pl. Opp. at 12, but this disparity was justified because plaintiff's infractions were far more severe.[12]

  B. <u>Officer Williams's violations were less sever and numerous than plaintiff's violations</u>.

Officer Williams' situation is also markedly different from that of plaintiff. Only one of the alleged comparators (Officer Williams) had sustained findings of untruthfulness. Plaintiff has had two. Officer Williams was involved in only two incidents: an incident where Officer Williams left his sector in order to engage in personal business and the above mentioned incident with Officer Burkholder. To some degree, the former incident is analogous to the incident where plaintiff left his sector in order to engage in personal business. To the extent the circumstances are similar, plaintiff and Officer Williams received similar discipline. However, this was Williams first disciplinary incident. Plaintiff's personal frolic was his fourth.

Plaintiff's transgression was magnified because, in addition to falsifying his run sheet, plaintiff gave false information to the dispatcher regarding his whereabouts and also gave false information to Lt. Heilmann when Heilmann was investigating the incident. He gave false information at the time of the incident (dispatcher), immediately after the incident (run sheet) and during the subsequent investigation of the incident (investigatory stage). Therefore, plaintiff received three sustained findings of untruthfulness (run sheet, dispatcher, investigating official) whereas Officer Williams

---

[12] Plaintiff also complains that "rather than termination, Defendant has recommended Officer Burkholder's participation into a variety of training and programs" Pl. Opp. at 12. Plaintiff has also been ordered to participate in training as part of the disciplinary process. SMF II.D.4.

had only one sustained finding (run sheet).  Plaintiff received an appropriate two-day suspensions for each of the three sustained findings of untruthfulness.  Officer Williams received a one day suspension for his sustained finding of untruthfulness.  Both plaintiff and Williams received one-day suspension for not devoting full time and attention to the business of the department.  Plaintiff received additional two-day suspensions because he failed to inform the responding U.S. Park Police sergeant about his personal involvement in the accident and for violating the oath of office.  Officer Williams received additional one day suspensions for failing to provide the Communications Division with an odometer reading before transporting a person of the opposite sex and failing to perform his duties without regard to status, sex, race, religion, or political belief or aspiration.  Plaintiff's suspension totaled 11 days.  Williams suspension totaled 4 days.  The only disparity for similar conduct is that plaintiff received two days for each finding of untruthfulness whereas Officer Williams received only a one day suspension.  However, this is explained by the fact that it was plaintiff's fourth disciplinary incident and involved a violation of untruthfulness or dishonesty.  It was Williams' first.

  Williams' other disciplinary incident was the above referenced stop with Officer Burkholder.  Williams was found to have engaged in two counts of making false statements for which he received a five-day suspension for each violation.  The total suspension was 13 days, which was later reduced to six days after Williams accepted responsibility and apologized for his misbehavior.   This was Williams' second offense for making false statements.  It is instructive to note that Williams received five days for each of his second offenses whereas plaintiff received only a two day suspension for his second incident.  Therefore, Officer Williams was actually disciplined more harshly

than plaintiff.

### C. Officer Musitano Had Only One Violation

Former Officer Musitano's situation is not even remotely comparable to that of plaintiff. With respect to Officer Musitano, plaintiff alleges only one comparable disciplinary incident. There were no sustained findings of untruthfulness. Former Officer Musitano received a two-day suspension for failure to safeguard prisoner property and a one-day suspension for failing to ensure that prisoner property is returned to the rightful owner. These infractions are nowhere close to plaintiff's situation either in number or kind.

III.    Conclusion

Plaintiff has clearly not met his burden of showing that '"*all of the relevant aspects* of [his] employment situation were *nearly identical* to those of the [allegedly comparable]' employee." Holbrook v. Reno, supra (emphasis added).  His attempt to show disparate treatment utterly fails.  Plaintiff was not suited to be a police officer and deserved to be fired.  He has not presented sufficient evidence for a jury to find discrimination.

        Respectfully submitted,

        WASHINGTON METROPOLITAN AREA
        TRANSIT AUTHORITY

        Carol B. O'Keeffe, #445277
        General Counsel

        Bruce P. Heppen #252171
        Deputy General Counsel


        _____/s/_____
        David J. Shaffer, #413484
        Assistant General Counsel
        WMATA
        600 Fifth Street, N.W.
        Washington, D.C.  20001
        (202) 962-2820
        Attorneys for Defendant WMATA